OZMORE *v.* CORAM.

BECK, J. 1. The parties to this case having reduced to writing their agreement for the sale of the property in controversy, the oral negotiations antecedent thereto were merged in the writing; consequently the portions of the defendant's answer contained in paragraphs 4, 5, and 6 of the answer, setting up as defense matter embraced merely in oral agreements and negotiations prior to the writing, which were necessarily merged therein, should have been stricken upon demurrer.

2. The court erred, also, in refusing to strike, upon demurrer, paragraph 12 of the answer, on the ground that it did not set forth valid matter of defense beyond a mere conclusion of the pleader.

3. It appearing that land was sold at a cash price, and that time was given by the vendor to the purchaser for the payment of the purchase-money, and a greater rate of interest than that allowed by law was charged on deferred payments, the contract was usurious. *Irvin* v. *Mathews,* 75 *Ga.* 739.

4. Where it was agreed in such contract "that the interest must be paid annually, or this contract is forfeited," such a provision could not be enforced and the contract declared forfeited, where the debtor had paid an amount equal to the legal rate of interest, though less than that stipulated in the writing; and the court should have given a charge, as requested, embodying this principle.

5. Instructions embodying a principle contrary to the ruling made in the 3d headnote were erroneous.

6. It was error for the court to give the following instruction to the jury: "If you believe that at some time, any year that you may believe that the contract was not forfeited, the second, third, or fourth, Coram insisted that he wanted more money,—that is, the money due on that annual payment and money due on the unpaid balances, and if you believe that Ozmore went and made arrangements with Hilton, or with any other person, to furnish him with the necessary amount of money to pay Coram what he was due as purchase-money on the place, and tendered to Coram $600 with all interest due thereon at the time of the tender, it would have been the duty of Coram to have accepted the money and made Ozmore a deed to the land, under this contract." This charge was erroneous, because not adjusted to the facts in the case, nor to the pleadings and contentions of the plaintiff.

7. Upon the measure of damages the court charged as follows: "You will calculate the interest on $600 for the first year at 10 per cent., see what Ozmore paid that year, and then calculate the interest for the next year at the same rate and see what Ozmore was due Coram at the time the land was sold, as rents on the place, then add that to $600 and subtract that amount from $1,250, and that will be the amount for which you will find your verdict." This charge was error, for the reason that it authorized the jury to calculate interest at a higher rate than that allowed by law, and assumed as an established fact that the plaintiff owed to the defendant some amount as rent "at the time the land was sold."

8. No other errors requiring the granting of a new trial are made to appear, though certain of the charges excepted to, in addition to those dealt with above, are open to the criticism that they are inaccurate and not altogether apt in the statement of the law applicable to the issues of the case.            *Judgment reversed. All the Justices concur.*

Submitted February 12,—Decided August 14, 1909.

Action for breach of contract.   Before J. D. Rambo, judge pro hac vice.   Clay superior court.   June 10, 1908.

In 1902 the parties "entered into the following agreement: that the said Coram of the first part has this day sold to the said Ozmore of the second part 250 acres of land [described] on the following conditions: that the said G. W. Coram of the first part agrees to take six hundred dollars cash for said land, and agrees to run any unpaid amt. at 10% per annum, and the said G. W.

Coram of the first part agrees that upon the payment of the above principal and interest to make the said W. T. Ozmore a warrantee deed to said land. It is further agreed that the interest must be paid annually, or this contract is forfeited and the said Coram assumes full control of said land." The breach alleged was, that about the first of January, 1905, Coram dispossessed Ozmore's tenant, without rescinding or offering to rescind the contract, or offering to protect Ozmore's equity arising from certain improvements and payments he had made, and sold the land to E. Hilton for $1,250, its then market value. By amendment Ozmore set up, that the stipulation as to forfeiture on failure of payment of the annual interest was void and unenforceable, being contrary to public policy and violative of the usury laws; that Coram waived strict compliance with the terms as to payment of annual interest, by accepting payments of $50 about October 1, 1902, $15 about October 1, 1903, and $36 about October 1, 1904; that in the fall of 1903, upon Coram expressing a desire for prompt payment of all arrears of interest, Ozmore negotiated for a sale of the land to one Chandler for $950, but Coram dissuaded him from consummating the trade at that price, and assured him that he (Coram) would give him additional time to pay the amount then overdue, and not insist on any forfeiture for failure in the future to comply strictly with the obligation to pay up the interest annually; and that soon thereafter Coram again expressed a desire for his money, and Ozmore promptly arranged with E. Hilton to get a sufficient loan to pay Coram in full, and to secure Hilton by a mortgage on the land, and Coram promised to go with Ozmore in order to effect this arrangement, but put him off from time to time, and never went with him as promised, although recognizing the contract as still subsisting, and not insisting on a forfeiture, and never notifying Ozmore of any claim of forfeiture until after the sale to Hilton; etc.

Coram denied a breach of the contract on his part, and set up several matters of defense. The paragraphs of his answer referred to in the first and second headnotes are, in substance, as follows: (4) He bought the land in December, 1900, for $600, borrowed the money to pay for it, and paid therefor interest at 10 per cent. per annum. In the same month he let Ozmore take possession under oral agreement that he would sell him the land for $600 and

give him time to pay for it in yearly installments if he desired, but upon the express condition that he would pay Coram 10 per cent. per annum on such sums of the original purchase-price as might be carried from time to time, this being the rate that Coram had to pay for the use of the money invested in the land, which was understood and agreed between him and Ozmore as the basis of a credit price for the land, but upon the further express and positive condition that Ozmore's right to retain possession of the land under the contract of purchase should depend on the prompt yearly payments of $60 for the use of the land and money, and that if he failed in such payments the possession of the land should be surrendered to Coram. (5) Ozmore went into possession, and became indebted to Coram $60 for the use of the land for 1901. About December, 1901, he paid Coram $50 to be applied as a credit on that account, which was accepted for that purpose only, and under a distinct agreement from Ozmore that in a short time he would pay the balance of $10 for the use of the land for 1901. (6) When the written contract was executed Ozmore had been in possession for the previous year under the oral agreement; he owed Coram the $10 just mentioned, and promised soon to pay it. (12) Ozmore being indebted to Coram $115 for the payments he had agreed to make in 1902 and 1903, having violated his promise and contract made in 1904 (under which Coram had allowed him to continue in possession after he had surrendered all rights under the former contract), and having paid nothing for the year 1904, Coram went to the place in the fall of 1904, and, finding it open, took possession of his property, as he had the right to do both under his original contract with Ozmore and under the subsequent agreement made in 1904, Ozmore having violated every agreement he had made with Coram.

There was a verdict in Coram's favor. Ozmore excepted to the overruling of his motion to strike the four paragraphs of the answer just set forth, and of his motion for a new trial. The material grounds of the latter motion are sufficiently indicated by the headnotes.

*Pottle & Glessner* and *Smith & Miller,* for plaintiff.

*King & Castellow,* for defendant.