### PAULK v. CALVERT MORTGAGE COMPANY.

ATKINSON, J. 1. It is declared by statute: "All building and loan associations, and other like associations doing business in this State, are authorized to lend money to persons not members thereof, nor shareholders therein, at eight per cent. or less and to aggregate the principal and interest at the date of the loan for the entire period of the loan, and to divide the sum of the principal and the interest for the entire period of the loan into monthly or other installments, and to take security by mortgage with waiver of exemption, or title, or both, upon and to real estate situated in the county in which said building and loan association may be located." Civil Code (1910), § 2878. Also "The name 'building and loan association,' as used in this article, shall include all corporations, societies, or organizations or associations doing a savings and loan or investment business on the building society plan, viz., loaning its funds to its members, whether issuing certificates of stock which mature at a time fixed in advance or not, except those which restrict their business to the county of their domicile and not more than two other adjacent counties." Civil Code (1910), § 2890.

2. A corporation whose charter authorizes it to lend "on real or personal property such sums of money as shall be from time to time paid in by stockholders in such manner as shall be prescribed by the by-laws of said association, . . and also for the purpose of transacting any and all business usual and lawful for the carrying on of the general business of a building and loan association as the same is now or may hereafter be conducted," is a building and loan association within the meaning of the above quoted statute.

(a) The case under consideration differs on its facts from *McIntosh* v.

*Thomasville Real Estate &c. Co.*, 138 *Ga*. 128 (74 S. E. 1088, Ann. Cas. 1914C, 1302), in which it was held that the company there involved was not a building and loan association; but the principles recognized in the opinion delivered in that case support the above ruling.

(*b*) The Calvert Building and Loan Association of Baltimore City having been given powers as indicated in the second division, that association was a building and loan association within the meaning of the statute quoted in the first division.

3. Mere changes of name, first to the Calvert Mortgage and Deposit Company of Baltimore City, and later to the Calvert Mortgage Company, did not change the character of the corporation as a building and loan association.

4. It is declared in the Civil Code (1910), § 2887: "No building and loan association organized under the laws of any other State, Territory, or foreign government shall do business in this State, unless said association shall deposit, and continually thereafter keep deposited, in trust for all of its members and creditors, with some responsible trust company, or with the State depository of this or some other State of the United States, seventy-five per cent. of all its securities; all of the personal obligations of its members taken in the ordinary course of business of such association and secured by first mortgages on real estate; seventy-five per cent. of all dividends and interest which may accrue on securities held in trust, as aforesaid, by the trust company or the State depository, as provided for herein. All dues or monthly payments which may become payable on stock pledged as security for loans, the mortgages for which are on deposit in accordance with the provisions of this article, may be collected and retained by the association depositing such securities or mortgages. Any securities on deposit of said building and loan association in this State, if the amount of said securities so deposited is less than all of its securities, may, from time to time, be drawn, if others of equal value are substituted therefor. Every building and loan association, organized under the laws of any State, Territory, or foreign government, shall, before commencing to do business in this State—1. File with the secretary of this State, a duly authenticated copy of its charter or articles of incorporation. 2. File with the secretary of this State the certificate of the proper State officer of another State, or the president or secretary of some responsible trust company, certifying that it has on deposit seventy-five per cent. of all the securities, not less than twenty-five thousand dollars, of the kind and amount required by the laws of such other State, taken in the regular course of business, in trust for all the members and creditors of such building and loan association. 3. File with the secretary of this State a duly authenticated copy of a resolution adopted by the board of directors of such association, stipulating and agreeing that if any legal process affecting such association be served on said secretary of State, and a copy thereof be mailed, postage prepaid by the party procuring the issuing of the same, or his attorney, to said association, addressed to its home office, then such service and mailing of such process shall have the same effect as personal service on said association in this State. 4. Pay the secretary of this State fifty dollars as fees for filing the papers men-

tioned in this section." *Held:* Even if a loan contract of the character involved in this case would be rendered illegal as violative of the laws of this State against usury, by failure, before making the contract, to file with the secretary of State the required certified copy of certificate of charter, or certificate of deposit, or consent as to service of process, such failure would not have such effect where, before making a loan contract dated July 17th, 1913, being prior to the amendatory act of 1913 (Acts 1913, p. 54), the company filed with the secretary of State a certified copy of the original charter and subsequently filed the certificate of deposit, and the consent as to service, in the changed name under which it was doing business; nor in the circumstances would the delay in filing a copy of the amendment making the last change of name until after the contract destroy its effectiveness. As to such a contract the filing of the certified copy of the charter and the certificate of deposit and consent as to service in the changed name of the company would be a substantial compliance with the statute. A different ruling is not required by the case of *Bradford* v. *Water Lot Co.*, 58 *Ga.* 280, where a different question was involved.

5. There was no conflict of evidence on any material issue in the case.

6. Applying the foregoing principles, the judge did not err in overruling the demurrer to the petition and in directing the verdict for the plaintiff.                    *Judgment affirmed. All the Justices concur.*

No. 4192. FEBRUARY 25, 1925.

Equitable petition. Before Judge Eve. Irwin superior court. January 11, 1924.

On July 17, 1913, W. E. Paulk, at Ocilla, Georgia, executed 72 notes in each of which he promised "to pay to the Calvert Mortgage Company a Mutual Building and Loan Association," $17.47, at a specified date, "with interest from maturity at 8 per cent. per annum, with all costs of collection, including 10 per cent. on amount due as attorney's fees, if sued." The maturities of the notes were at regular monthly intervals. Each note contained a clause giving the payee an option to accelerate maturity of all notes as to principal and accumulated interest if any one of them should not be promptly paid at maturity, and the further clause: "This is a series of notes of like tenor and date, secured by deed to real estate of even date herewith, executed to payee herein, and by maker to be duly recorded, which real estate is subject to no prior lien or incumbrance." A security deed as referred to in the notes was duly executed and recorded, which conveyed described land in Irwin County. The deed described the grantee as "The Calvert Mortgage Company, a corporation under the laws of Maryland." The maker paid forty-six of the notes. After some of the notes had matured and were unpaid, the payee, on

January 1, 1918, gave notice as provided by the Civil Code (1910), § 4252, preliminary to a claim for attorney's fees. After giving such notice the payee filed suit returnable to the succeeding term of the superior court, praying for a judgment upon the notes that were due, that the judgment be declared to be a special lien upon the land, and that upon a final hearing a receiver be appointed to hold all funds realized from sale of the land in excess of the judgment for the amount of the matured notes, to be paid upon the unmatured notes when the dates of their respective maturities should arrive.

The defendant filed a demurrer to the petition, on the grounds: (1, 2) that the petition failed to allege a cause of action for any of the relief prayed. (3) "Because it appears from the allegations of said petition that the contract declared upon in plaintiff's petition is infected with usury to the extent of $204.00, and that if the payments made by this defendant in discharging the first forty-six notes had been rightfully applied all of the notes sued upon in said case would have been fully paid off and discharged, except the sum of $1.62 would be due and owing on the last of said notes sued upon." (4) "Said petition upon its face shows that the contract declared upon was usurious, and therefore plaintiff is not entitled to have any lien set up upon the land described in the copy deed attached as an exhibit to said petition." The defendant also filed an answer, admitting execution of the notes and deed, and alleging that they were made with the understanding that plaintiff was to make defendant a loan of $850, but that the amount of the loan was not delivered to defendant until about thirty days after the date of the notes and deed; that in making the contract the plaintiff calculated interest on $850 for the full period of six years at eight per cent. per annum, making an aggregate of $1258, for which sum the 72 notes were given, payable in monthly installments; that the plan adopted amounted to a charge of interest by the plaintiff at the rate of 16 per cent. per annum, and was usurious; that the usury charged amounted to $204; that the aggregate amount due by defendant on the 72 notes is $1054; that defendant has paid $803.12, thus paying the first 54 notes in full, and leaving a balance on the fifty-fifth note of $1.62; that prior to the filing of the suit defendant tendered to plaintiff "the full amount legally due . . on the notes sued" and "all the remaining notes of said series,"

which tender was declined; that defendant offers and stands ready to pay the balance due upon the loan with interest at the rate of 8 per cent. per annum, but declines to pay interest at the rate of 16 per cent. per annum.

By an amendment to his answer the defendant alleged: (1-3) That on the date of the notes the plaintiff was not a building and loan association as contemplated by the laws of Georgia, and was not authorized to aggregate principal and interest (at the rate of 8 per cent. per annum) of a loan from its date to the end of the entire period and divide it into monthly installments and to take security by title to real estate: "Because said plaintiff had not, on the 17th day of July, 1913, filed with the Secretary of the State of Georgia a duly authenticated copy of its charter or articles of incorporation. . . Because the said plaintiff had not, on the 17th day of July, 1913, filed with the Secretary of State the certificate of the proper officer of another State, or the president or secretary of some responsible trust company, certifying that it has on deposit seventy-five per cent. of all the securities not less that [than?] $25,000.00 of the kind and amount required by the laws of the State of Maryland, taken in the regular course of business, in trust for all the members and creditors of such building and loan association. . . Because the said plaintiff, the Calvert Mortgage Company, had not, on the 17th day of July, 1913, filed with the Secretary of State a duly authenticated copy of the resolution adopted by the board of directors of such company, stipulating and agreeing that if any legal process affecting such association or company be served on the said Secretary of State, and a copy thereof be mailed postage prepaid by the party procuring and issuing the same, or his attorney, to said association, addressed to its home office, and further stipulating that such service and mailing of such process would have the same effect as personal service on said association or corporation in the State of Georgia." (2) That the plaintiff was not on such note entitled to charge interest at a rate exceeding eight per cent. per annum. (4) That in procuring the loan defendant did not deal with plaintiff as a building and loan association, and the statement put in the notes by plaintiff that plaintiff was a building and loan association was "merely a ruse or device employed by plaintiff to evade the usury laws of this State." (5) That on account of the facts alleged the plaintiff is entitled to collect "only

eight per cent. simple interest" on the loan. A second amendment to the answer amplified the former plea of usury, and alleged that the deed was void on account of its being infected with usury, and consequently the plaintiff was not entitled to set up a special lien on the land. At the May term, 1923, the demurrer to the petition was overruled, and the defendant excepted pendente lite. On the final trial at the November term, 1923, the plaintiff, without objection by defendant, amended the petition by alleging that all of the notes had become due, and praying for a judgment for the full amount of the notes. After both sides had introduced evidence and closed, the judge directed a verdict finding for the plaintiff the full amount of principal, interest, and attorney's fees sued for, and setting up a special lien on the property. A decree was accordingly entered. The defendant made a motion for a new trial on the usual general grounds, which was subsequently amended by elaborating the original grounds, and finally by alleging that the judge erred in directing the verdict, because there were issues of fact made by the evidence that should have been submitted to the jury. The motion for a new trial was overruled, and the defendant excepted, assigning error on the judgment refusing a new trial and also on the exceptions pendente lite.

On the trial the evidence showed, in addition to the admissions contained in the pleadings, the following facts: (1) The plaintiff gave the required notice relating to claiming attorney's fees. (2) The Calvert Building and Loan Association of Baltimore City was incorporated under the laws of the State of Maryland in 1902, and in 1904 its name was changed, under the laws of Maryland, to the "Calvert Mortgage and Deposit Company of Baltimore City," and in March, 1913, the latter name was changed to the Calvert Mortgage Company. (3) The three names applied to the same corporation, and there was no change except in the name. (4) The charter of the "Calvert Building and Loan Association of Baltimore City" authorized it to lend "on real or personal property such sums of money as shall be from time to time paid in by stockholders in such manner as shall be prescribed by the by-laws of said association, . . and also for the purpose of transacting any and all business usual and lawful for the carrying on of the general business of a building and loan association as the same is now or may hereafter be conducted." (5) The Calvert Building and Loan Association filed in the office of the

Secretary of State of the State of Georgia a resolution by its board of directors, as follows: "Whereas this association is about to enter the State of Georgia for the transaction of business, and to that end has applied to the Secretary of State of Georgia for a license: therefore be it resolved, that it is hereby stipulated and agreed that if any legal process affecting the said Calvert Building & Loan Association of Baltimore City, within the State of Georgia, be served on the Secretary of State of Georgia, and a copy thereof mailed, postage prepaid, by the party procuring the issuing of the same, or his attorney, to the said Calvert Building & Loan Association, of Baltimore, addressed to its home office in Union Trust Company Building in the City of Baltimore, State of Maryland, then such service and mailing of such process shall have the same effect as personal service on this association in the said State of Georgia. Adopted this the 14th day of January, 1902." (6) There was not of file in the office of Secretary of State any such resolution as just indicated after either of the changes as to name. (7) There was of file a letter by the attorney of the Calvert Mortgage and Deposit Company, dated January 18, 1905, addressed to the Secretary of State, as follows: "In compliance with your letter of November 26th, 1904, I beg to enclose you certificate from the Union Trust Company, of this city, that it holds in trust for all of the members and creditors of the Calvert Mortgage and Deposit Company mortgages and securities previously held by said Trust Company for all the members and creditors of the Calvert Building and Loan Association. As you will remember, it is the same corporation with a change of name. This removes all doubt as to our complying with the laws of Georgia on this point. I also enclose you power of attorney from Calvert Mortgage and Deposit Company to you to accept service of process in Georgia, as required by your laws. I believe this is all that is necessary for us to do to authorize us to do business in Georgia under our new name. Will you kindly acknowledge receipt of these papers, and oblige."

The Secretary of State testified: "The records of this office show that the certificate of deposit of securities necessary to do business in this State of the Calvert Building & Loan Association were simply changed from the Union Trust Company to the Munsey Trust Company. The securities originally deposited were never withdrawn; simply evidence of a change of ownership was

filed, and a change of the trustees from the Union Trust Company to the Munsey Trust Company. I think it is correctly stated to say that since the trust company filed its certificate here in 1906, this office has always had a certificate from a trust company showing they held the necessary securities for this company to do business in this State. The certificate is here, and it has apparently been here, and no other has been substituted in its place since its original filing. It appears to be the case that the Calvert Building & Loan Association did file in this office a power of attorney to accept service for the company in the State, and it is now in this office, and appears to have been here since January 20th, 1905. . . The document of file in this office indicating the change of name from the Calvert Mortgage and Deposit Company to the Calvert Mortgage Company purports to be a certified copy of a record of the Maryland superior court. It appears from the records of this office and from correspondence with my predecessor, Mr. Cook, that the certificate of the Union Trust Company was filed on January 18th, 1905. At that time it was the Calvert Mortgage and Deposit Company that was doing business in the State of Georgia, and that certificate stood good until a substitute certificate was filed by the Munsey Trust Company on December 22, 1913. Then it was filed, at that time, on behalf of the Calvert Mortgage Company. Prior to that time no certificate showing the necessary deposit of an approved trust company, as required by the laws of this State, had been filed in this office on behalf of the Calvert Mortgage Company. The power of attorney, of file in this office, to accept service on behalf of any of these companies was filed on behalf of the Calvert Mortgage & Deposit Company. No paper can be found in this office showing a power of attorney granted to the Secretary of State to accept service on behalf of the Calvert Mortgage Company. So far as I personally know, and so far as I officially know, this is the only designation of persons to receive service on behalf of any of these companies, and this is on behalf of the Calvert Mortgage and Deposit Company, and is dated the 11th day of January, 1905, and was filed in this office on January 20th, 1905. . . . My records show that the Calvert Mortgage Company is the same corporation as the Calvert Building and Loan Association and the Calvert Mortgage and Deposit Company, except there has just

been a change of name from time to time." The resolution show-ing the change·of name to Calvert Mortgage Company was not filed in the office of the Secretary of State until November 28th, 1919.

*Eldridge Cutts* and *Quincey & Rice,* for plaintiff in error.
*A. J. & J. C. McDonald,* contra.