### E. TRIS NAPIER COMPANY *v.* TRAWICK.

Under the pleadings and the evidence on the issue whether notes taken for the price of land sold were usurious, the instructions to the jury were not erroneous on the grounds taken in the exceptions; and the evidence was sufficient to support the verdict.

No. 5646. SEPTEMBER 17, 1927. REHEARING DENIED SEPTEMBER 29, 1927.

Equitable petition. Before Judge Malcolm D. Jones. Bibb superior court. July 21, 1926.

*Ryals, Anderson & Anderson,* for plaintiff in error.

*Walter DeFore* and *James C. Estes,* contra.

ATKINSON, J. E. Tris Napier Company, a corporation, executed to Adolphus Trawick a warranty deed purporting to convey described realty, upon the expressed consideration of five hundred dollars. On the same day Trawick executed to the corporation certain purchase-money notes payable at monthly intervals covering a period of six years, and a security deed purporting to convey the same land as security for the notes. Trawick could not read or write or calculate principal or interest, and when the land was purchased he trusted to the vendor to prepare the deed, notes, and security deed, and they were all executed as prepared by the vendor. When the larger part of the notes had been paid, Trawick refused to pay any more, and instituted an action against the corporation

Usury, 39 Cyc. 926, n. 86; p. 927, n. 89; p. 928, n. 94; p. 1055, n. 77; p. 1059, n. 7.

to cancel the security deed and the unpaid notes and to recover a money judgment, on the ground that an excessive number of notes had been given, and that the notes that had been paid exceeded the amount of the purchase-price and interest at the legal rate, the excess being due to improper inclusion of usury unknown to the plaintiff. Other facts will hereinafter sufficiently appear.

1. If a vendor and vendee agree upon a cash price of property which is the subject-matter of the sale, but the sale itself is not for cash but is distinctly on a credit until a particular time in the future, the transaction will not be rendered usurious because the vendor in order to make a time price on the property adds to the cash price another sum and includes the total amount thus arrived at in a promissory note which the purchaser gives, securing the same by a mortgage on realty. The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and though in a given instance this difference may exceed eight per cent., the law as to usury is not applicable. *Rushing* v. *Worsham,* 102 *Ga.* 825 (30 S. E. 541). See also Graeme *v.* Adams, 23 Gratt. (Va.) 225 (14 Am. R. 130, 135); Davidson *v.* Davis, 59 Fla. 476 (52 So. 139, 28 L. R. A. (N. S.) 102, 20 Ann. Cas. 1130); 29 Am. & Eng. Enc. Law (2d ed.), 478; 27 R. C. L. 214, 215. If, however, the property is sold at a cash price, and time is given by the vendor to the purchaser upon a portion of the purchase-money, and a greater rate of interest than that allowed by law is charged on such deferred payments, the contract is usurious. *Irvin* v. *Mathews,* 75 *Ga.* 739 (2); *Ozmore* v. *Coram,* 133 *Ga.* 250 (3) (65 S. E. 448).

2. Under the pleadings there was an issue upon which the evidence was conflicting as to whether the principal and interest included in the notes represented the agreed purchase-price for the land or whether they included a flat sum as principal agreed to be paid for the land upon which lawful interest should be paid. Under application of the principle stated in the first paragraph, it was not erroneous, for any reason assigned, to charge the jury as follows: "The plaintiff contends that even if there was not fraud in the transaction, even if the trade was for $1250, plus interest, etc., that the circumstances of this case, and the evidence of the case shows that this was a usurious transaction, that Adolphus Trawick bought the property from Mr. Napier, even if it was

$1250 that was agreed upon, that E. Tris Napier Company has added to that price of $1250 eight per cent. interest for the entire time, and has divided that up into seventy-two monthly installments, that that amounts to more than eight per cent. interest, that the trade is usurious, and is for that reason void.  I charge you as a matter of law that if an individual should add the interest for the seventy-two months at eight per cent. to the principal and cut that up into seventy-two monthly installments, that amounts to more than eight per cent. interest, and eight per cent. is the highest rate of interest in Georgia.  That would be usurious, for the reason that the money is kept by the borrower for an average time of only thirty-six months, while the interest is collected on the full amount of principal for seventy-two months, and that divided up into monthly installments; and if that is the truth of the transaction, if this was a loan or an extension of credit or forbearance on the part of the defendant for the use of this money, if eight per cent. of the principal was added to the $1250 and cut up into seventy-two installments, that would be a usurious transaction, and the result would cancel the security attached to the deed, and only $1250 could be charged against Adolphus Trawick.  Usury is the taking or agreeing to take an amount of interest in excess of that allowed by law; and I charge you that if this was a transaction to which the laws of usury could be applied, that that manner of calculating interest would be usury.  .  .  Mr. Estes contends for the plaintiff in the case that the real contract between the parties is that Adolphus Trawick bought this house and lot, on the $1250 theory, for $1250, if that was the amount agreed upon, and that it was agreed between the parties that eight per cent. should be added for seventy-two months, and then divided up, and that was added under the contract between the parties as a matter of interest, as forbearance for the use of that money, that $1250 during the seventy-two months.  .  .  If Mr. Estes is right in his contention about the matter, then $1250 is the only legal part of that debt, assuming that $1250 was the amount agreed to be paid. .  .  The law is this:  If these parties agreed that the property was to be purchased by Adolphus Trawick for $1250, and the additional amount in the neighborhood of $600 was added to it by way of forbearance for the use of the money by Adolphus Trawick for the seventy-two months, then that would be a usurious trans-

action. That is illegal. . . If, on the other hand, the plaintiff agreed to buy the property for the cash price, and that for the use of the money during a part or all of the time, the plaintiff agreed that he would pay interest for the forbearance of the paper that he signed, then that is a sale to which the usury laws apply. You see you are to look into all the facts, and see what this trade was between Adolphus Trawick and E. Tris Napier Company. Did Adolphus Trawick buy the property for $1250, and then did he get an extension of time in the payment of the cash price, and, in view of that, agree to pay interest for the same; or did he buy the property from Napier for a time price of $1800, or, another way to express it, $1250 plus interest for seventy-two months, to be divided up into monthly payments? If this was a time-price trade, then Napier would have the right to sell it to him for $1250 plus a thousand per cent. interest, and the usury law would have nothing to do with it; but if it was a cash-price sale, and interest was added by way of compensation for the extension of time allowed for the use of the cash consideration, then the usury statutes would apply and render the transaction void. . . If a man agrees to enter into a usurious contract willingly and knowingly, that does not make the contract legal. If this contract is usurious, it would be illegal and void, whether Adolphus Trawick knew it and consented to it or not. The law is the thing that makes the usurious contract illegal."

The criticisms upon this charge were: (a) Because the court, by reiteration, unduly stressed and emphasized the contentions of the plaintiff on the subject of usury. (b) Because no evidence was introduced on the trial to support any charge on the subject of usury. (c) Because there was no conflict in the evidence in so far as it related to the charges of usury, and hence the court should not have submitted that question to the jury for decision, but should have decided, as a matter of law, that the transaction between the plaintiff and the defendant, under the evidence, was not one which was open to an attack, on a charge of usury. (d) Because it appeared, from the undisputed evidence in the case, that the transaction upon which the charges of usury were based was a sale of land, and not a loan or forbearance for the use of money, and that the agreements to pay interest on a stipulated amount, at the rate of eight per cent. per annum, for the whole period of

time, covered by the deferred payments, and to divide the whole amount into monthly payments of $25 each, were terms of the contract of sale itself, and hence as a matter of law the transaction was not open to attack on a charge of usury. (e) And because it appeared, from the undisputed evidence, that it was never contemplated or intended by the parties to the transaction that the plaintiff should pay in cash the whole purchase-price of said land, but that he should pay only a small portion thereof in cash, and that he should pay the balance, with eight per cent. interest, for the whole period of the deferred payments, in monthly installments of $25 each, the stipulations as to interest, as well as those relating to the principal, constituting an essential part of the contract of sale between the parties.

3. Nor was it erroneous, for any reason assigned, to charge the jury: "The plaintiff contends that even if there was not fraud in the transaction, even if the trade was for $1250, plus interest, etc., that the circumstances of this case and the evidence of the case shows that this was a usurious transaction, that Adolphus Trawick bought the property from Mr. Napier, even if it was $1250 that was agreed upon, that E. Tris Napier Company has added to that price of $1250 eight per cent. interest for the entire time, and has divided that up into seventy-two monthly installments, that that amounts to more than eight per cent. interest, that the trade is usurious, and is for that reason void. I charge you as a matter of law that if an individual should add the interest for the seventy-two months at eight per cent. to the principal and cut that up into seventy-two monthly installments, that amounts to more than eight per cent. interest, and eight per cent. is the highest rate of interest in Georgia." The criticisms upon this charge were: (a) That the court instructed the jury in effect that the addition of interest to an agreed sum for a period of time, and the division of the principal and interest so added into monthly installments, would render the transaction usurious even if they should believe the same was a contract of sale on time and that the addition of interest and division into monthly installments was an essential part of such contract of sale. (b) That the court failed in that connection, or anywhere else in its charge to the jury, to instruct them that, if they believed that the agreement to add interest at the rate of eight per cent. per annum for the whole

50

period to a stipulated amount, and to divide the whole amount so obtained into monthly installments, was a part of the contract of sale, as it was agreed upon between the parties, the transaction would not be a loan or forbearance for the use of money, and the laws governing usurious contracts would not be applicable.

4. Nor was it erroneous, for any reason assigned, to charge the jury: "Mr. Estes contends for the plaintiff in the case that the real contract between the parties is that Adolphus Trawick bought this house and lot, on the $1250 theory, for $1250, if that was the amount agreed upon, and that it was agreed between the parties that eight per cent. should be added for seventy-two months, and then divided up, and that that was added under the contract between the parties as a matter of interest, as forbearance for the use of that money, that $1250 during the seventy-two months. If Mr. Estes is right in his contention about the matter, then $1250 is the only legal part of that debt, assuming that $1250 was the amount agreed to be paid." The criticisms upon this charge were: (a) That the jury were instructed, in effect, that even if they believed that the agreement to pay interest on an amount agreed upon for the sale of the land was a part of the contract of sale itself, and constituted the terms upon which the land was sold by the Napier Company to Adolphus Trawick on time, they would still be justified in finding that the interest so agreed upon was a forbearance for the use of money, and if the same exceeded the legal rate of interest it would be usurious; (b) that the court failed to make any distinction between a cash sale accompanied by a subsequent extension of time and interest charged for forbearance in the use of the money which the contract contemplated should be paid in cash, and a time sale in which interest was added to an agreed amount as a part of the contract of sale itself, and represented the difference between the cash price and the time price of the property; movant contending that, under the instruction above quoted, the jury was authorized to conclude that it was warranted in finding the contract was usurious in either event, provided the amount added to the agreed principal was in the form of interest; and movant contends that this error might have and very likely did influence the jury to find for the plaintiff, as they did find, on the issue of usury, when they might not have so found otherwise.

5. The sixth ground of the motion for new trial complained of

certain excerpts from the charge of the court, as follows: "Every-thing I have said about usury rendering the transaction void must be taken with this qualification, which I now give you, that usury does render such transactions void, as I have outlined to you, unless it should appear from the evidence that E. Tris Napier Company is a savings institution which pays interest to its depositors, and whose deposits are not subject to check. . . Is the E. Tris Napier Company a savings institution, under the facts of this case, and does it pay interest to its depositors, and is it true that its deposits are not subject to check? As a general proposition, the law of usury applies to everybody just alike, but this savings bank institution, of the character I have outlined to you, is an exception to that rule; and therefore the burden of proof would be on the E. Tris Napier Company in this particular matter to show that E. Tris Napier Company is a savings institution, and that it does pay interest on deposits, and that these deposits are not subject to check. If it is a savings institution, if it did pay interest to its depositors, and if its deposits are not subject to check, then it would not make any difference if there was sixteen per cent. usury in the transaction, you would find that it was not a usurious transaction as to that particular kind of company." The criticism upon each of these excerpts was as follows: (a) The only evidence which bore upon the question as to whether the de-fendant was such an institution as might under the law charge the highest rate of interest for a term of years, add the result to the principal debt, and divide the whole into monthly installments, was contained in the original charter of the defendant company and the amendment thereto, which were in writing, and the testi-mony of the president of the company, and in the light of such evi-dence there was no issue of fact to be decided by the jury touching the character of the corporation or its method of doing business; and therefore the court should not have submitted that question to the jury, but should have decided as a matter of law that under the evidence submitted the company was a savings institution within the meaning of the law as contained in the Civil Code (1910) §§ 2878 et seq., and that a contract of the character above indicated was not usurious or unlawful; that the language of the court was calculated to mislead the jury into believing that if they did not find from the evidence that the company was a sav-

ings institution under the rules given them by the court, they would be obliged to find that the transaction was usurious and therefore void, without reference to whether it was a sale or a loan, and without reference to whether the sale was for cash or on time, or whether the stipulations relating to interest were a part of the contract of sale itself or represented a charge of forbearance for the use of money.

The capital stock in the corporation was $25,000. divided into shares of the par value of $100 each. The object of the corporation, as declared in the original charter, was to do "a general real estate, building, loan, and improvement business; to borrow or lend money, taking or giving any form of security, either real or personal; to buy or sell stocks, bonds, purchase-money notes, or any other negotiable securities, and to buy or sell generally all kinds of property, either real or personal;  . .  to act as agents for any other person or corporation in negotiating loans, and to charge commissions and fees therefor, and the right to act as trustee, executor, or guardian, and to act as bondsman in the giving of surety and indemnity bonds in so far as the same may be legally done by a corporation under the laws of Georgia, [to do]  . .  a general farmer's supply and fertilizer business; to buy and sell to farmers guano or fertilizer material, live stock, wagons, farming implements, provisions of all kinds, etc." The charter of the company was amended "so as to authorize it to carry on the business of a savings institution, with the right as such to receive deposits, not subject to check, and to pay interest thereon; to lend money on real estate, personal property, or other security in any county in the State of Georgia, taking therefor notes with or without indorsement, mortgages, deeds, transferred executions, or other security in its discretion, with the right and power to charge interest on such loans, not to exceed the highest rate allowed by law, for any period or periods of time that may be agreed upon between it and its borrowers, and to aggregate the principal and interest for the whole period of such loans, at the date thereof, and to collect the same by monthly or other installments as may be agreed upon between it and its borrowers, without rebate or reduction, provided not more than the legal rate of interest shall be charged, which contracts and securities shall be valid and binding for the full amount of principal and interest charged, and shall

not be held or deemed to be usurious, pursuant to the provisions of sections 2878 et seq. of the Georgia Code of 1910 and the act of the legislature approved August 15th, 1910, amendatory thereof."

The defendant's president, testifying as a witness, identified the copy of the charter and amendment, and testified that the company "has been conducting its business under the charter and the amendment to it. It never has surrendered its charter." On cross-examination he testified: "I own all of the stock of the E. Tris Napier Company. Nobody had any interest in it at the time of this transaction, except me. We maintained corporate organization in the way of minutes. We do not at this time. We passed a resolution. That was something we did for the purpose of income tax. . . There had been no member of the corporation from the date of this transaction up to now that had the privilege of sharing in any profits or having any powers in the operation of the company. Adolphus Trawick was given no interest in the company on account of this transaction. It was just a question, so far as he was concerned, of carrying out this transaction as agreed upon." On redirect examination the witness testified: "At the time of this transaction we had negotiations like a savings bank. I don't know whether we had any depositors as a savings institution at that time or not, but we very frequently do. I had all the stock in the company and had exclusive control of the company. We have had money left with us, not subject to check. I have had it deposited, and paid interest on it, and used it as my own money. I kept it as a savings account, and kept a set of books as a savings institution, and paid interest on the balances. I could not tell whether I did that at this particular time or not, unless I had the books." In the light of the foregoing evidence, the charge was not erroneous as against the defendant for the reasons stated. In this connection see *McIntosh* v. *Thomasville Real Estate &c. Co.,* 138 *Ga.* 128 (74 S. E. 1088, Ann. Cas. 1914C, 1302); *Paulk* v. *Calvert Mortgage,* 160 *Ga.* 7 (127 S. E. 134).

6. The foregoing disposes of all the assignments of error based on the special grounds of the motion for new trial that were argued in the brief of the attorneys for the plaintiff in error.

7. The evidence was sufficient to support the verdict for the plaintiff on the second count in the petition, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Gilbert, J., disqualified.*