**MURDOCK ACCEPTANCE CORPORATION, Plaintiff-Appellee-Cross Appellant,**

v.

**William Arthur WAGNON and Jacqueline B. Wagnon, Defendants-Appellants-Cross Appellees.**

No. 77–1403.

United States Court of Appeals, Fifth Circuit.

Jan. 12, 1979.

Charles D. Read, Jr., Decatur, Ga., for defendants-appellants-cross appellees.

Robert L. McHaney, Jr., Starkville, Miss., for plaintiff-appellee-cross appellant.

Before BROWN, Chief Judge, TUTTLE and THORNBERRY, Circuit Judges.

TUTTLE, Circuit Judge:

This is a diversity action brought by Murdock Acceptance Corporation ("Murdock"), a Tennessee corporation, against Mr. and Mrs. Willie Wagnon, citizens of Georgia. Murdock sued upon five promissory notes with a cumulative total of $37,713.99, which were made in connection with the purchase of five resort lots by the Wagnons at Sugar Tree and English Mountain resorts in Tennessee. Each lot was purchased by making a 10 percent cash down payment and signing promissory notes for the remainder, the period of payment extending for seven years from the date of execution.[1]

These transactions occurred in January and February of 1974. In April, the developers of these two resorts assigned the notes to Murdock to obtain additional operating capital. In May, the Wagnons refused to make further payments on the notes,

---

1. In connection with each sale, the parties signed a contract which included "Terms of Sale and Disclosure Statement Required by Federal Law." While the figures in each statement vary in amount according to the price of the lots, the form was consistent throughout. The statement for one of the contracts gave the following information:

| | | |
|---|---|---|
| (1) Cash Price | | $5,000.00 |
| (2) Less Downpayment: | | |
| a) Cash Downpayment | $500.00 | |
| Total Downpayment | | 500.00 |
| (3) Unpaid Balance of Cash Price | | $4,500.00 |
| (4) Other Charges: | | |
| Title Insurance | $ 50.00 | |
| Recording Fees | 50.00 | |
| Total | | $ 100.00 |

| | |
|---|---|
| (5) Amount Financed | $4,600.00 |
| (6) FINANCE CHARGE | 2,254.40 |
| (7) Total of Payments | 6,854.40 |
| (8) Deferred Payment Price | 7,354.40 |
| ANNUAL PERCENTAGE RATE 12.15% | |

Each contract also contained the following provision: "Upon prepayment . . . ., Buyer is entitled to a rebate of the unearned portion of the FINANCE CHARGE computed in accordance with the 'Rule of 78's'" This is a formula often applied by lenders for rebate of unearned interest or finance charges. *See Neifield's Guide to Installment Contracts.*

contending that the developers had defaulted on certain promises made in connection with the sale of the lots and had gone bankrupt. Almost a year later, in March, 1975, it is alleged that Murdock gave the Wagnons "statutory notice," declaring all notes due and payable and stating that if the Wagnons did not pay the notes in full within ten days they would be held liable for attorney's fees allowable under Ga.Code Ann. § 20–506. When the Wagnons did not respond, Murdock filed this suit on March 24, 1975. The Wagnons did not deny execution of the contracts and notes, but answered with sixteen affirmative defenses and a counterclaim, most of which were abandoned at trial. Arguing that Murdock was not a holder in due course, the Wagnons assumed the burden of establishing the surviving defenses on the contracts: fraud in the inception based upon alleged false representations made by agents of the developers, failure of consideration due to the developers alleged failure to convey all of the deeds and title insurance policies, and accord and satisfaction based upon an alleged agreement with agents of the developers to rescind the contracts. They also denied receipt of the notice of attorney's fees.

The case went to trial on February 26, 1976. In an effort to save time and avoid confusion, the trial court submitted the case to the jury in sections by way of special interrogatories. First, the jury determined that Murdock was not a holder in due course, opening the way for the Wagnons' various defenses on the contracts and notes. After further introduction of evidence, argument of counsel, and instructions by the court, the jury considered the fraud defense, finding no fraud in the inception. Then, after argument of counsel and charges by the court, the jury returned a verdict for the Wagnons on the question of partial failure of consideration and for Murdock on the issue of accord and satisfaction. Finally, the jury was charged concerning the task of assessing the amount by which the Wagnons failed to receive that for which they had bargained. After deliberation, they returned a verdict finding a failure of consideration of $250.[2]

A number of rather unusual events took place after this final verdict. First, counsel for Murdock realized that the statutory notice letters regarding attorney's fees had not been tendered in evidence.[3] At this point, the court suggested that Murdock file a motion for judgment notwithstanding the verdict on the attorney's fees issue and proceeded to excuse the jury. Thereafter, Murdock moved for the j. n. o. v. and also filed a motion for determination and award of interest, together with supporting briefs and a computational sheet. Defendants filed their response to the j. n. o. v. motion, arguing first, that the right to make the motion was not preserved by a motion for a directed verdict, and further that the letters were never offered in evidence and that no request was made to reopen the evidence before the jury dispersed. The Wagnons also disagreed with Murdock's computations. An order was entered on March 19, 1976, allowing a new trial on the sole issue of attorney's fees. At this point, counsel for the defendants attempted to renew the usury defense, which had been dormant since the original pleadings.

Later, a brief nonevidentiary and unreported hearing was held on the matter of attorney's fees and award computations. The court then requested *pretrial* briefs on these issues; however, after considering the briefs, the court apparently determined

2. This apparently represented a failure of consideration of $50 per lot, based on the failure of the seller to furnish title insurance for which the parties had contracted at that rate.

3. The reason that these letters were not introduced is unclear. There was apparently an unreported discussion in the judge's chambers concerning the letters about which the trial judge said in his order of March 19, 1976, "where there was a discussion of the attorney's fees by counsel of both parties, in chambers, with the Judge, and it was agreed that the question was one of law as to the sufficiency of an admitted demand letter, it is reasonable to believe that the plaintiff's counsel was misled by not offering the said letter in evidence." Regardless of what occurred and who is at fault, it is clear that these statutory notice letters were never introduced in evidence.

that the issues could be decided as a matter of law. There was still no reported tender of the letters in evidence. A judgment was entered for Murdock in the amount of $36,-682.54. Although the record is confusing, it seems that the court arrived at this figure by interpreting the finding of a verdict for the full face amount due on the series of monthly notes as a prepayment under the prepayment privilege provision in the contracts and notes and thus provided for a rebate under the "Rule of 78's." The court also deducted the $250 for failure of consideration found by the jury. Finally, the court denied attorney's fees to Murdock, stating rather cryptically that "plaintiff is not entitled to late charges and attorney's fees inasmuch as plaintiff has requested amounts in excess of the sum he is entitled to receive."

On appeal, the Wagnons present four contentions for our consideration: 1) that the presentation of the case to the jury in five portions caused prejudicial confusion in the conduct of the case which required a new trial; 2) that the court erred in failing to give certain requests to charge submitted by the defendants; 3) that the notes were usurious, and that therefore no interest was allowable on them; 4) that even though the court should hold that the notes were not usurious, the computation of interest was erroneous.

Murdock Acceptance Corporation attacks the decision of the trial court denying it the attorney's fees provided for in the contract.

## I. "MULTIPLE TRIALS" AND REQUESTED CHARGES.

█ The trial court recognized that it was unusual to try a jury case by multiple presentations of evidence, arguments to the jury, and charges by the court. However, Rule 42(b) of the Federal Rules of Civil Procedure provides for the separate trial of any claim for expedition and economy. Moreover, when the trial court announced that it would handle this case, with some 16 separate defenses, by submitting all issues that had not been abandoned by the parties to the jury by separate interrogatories, appellant's counsel did not object. We conclude that no error occurred thereabout.

█ We have considered the contention that the trial court erred in failing to include requests to charge numbers 9, 10, 11, 13 and 14 submitted by the defendants in light of the entire charge to the jury and conclude that the charge as given adequately covered the issues dealing with the question of fraud in the inception of the contracts. Appellant's brief does not indicate what issue was sought to be presented by the proposed charges which was not contained adequately in the charge as given. We find no prejudicial error here.

## II. THE USURY DEFENSE.

█ The defendants asserted in their original answer that all of the notes "show that interest included therein is illegal and usurious and therefore not collectible." This defense was undoubtedly based upon the following rationale: that, under the terms of the contracts sued upon each lot was *purchased* by the Wagnons at the price listed as the "cash price," *see* footnote 1, *supra*; that after a down payment of 10 percent there remained a balance of 90 percent of the purchase price for the deferred payment of which the buyer agreed to pay interest at an annual percentage rate of 12.15 percent; that this, when added to the balance of the cash price, represented the face amount of the notes sued upon; that this annual rate of 12.15 percent exceeded the lawful rate of interest in Georgia at the time, which was 8 percent per annum; and therefore all interest was forfeited, reducing the amount due on the notes to a figure that would represent the "amount financed," as shown in footnote 1, *supra*, instead of the figure represented by the item "total of payments" as shown in the footnote.

The Georgia Supreme Court has confronted the law of usury as it applies to contracts for the sale of land where there is a cash down payment coupled with a mortgage for the balance, payable monthly over a number of years. It has said in effect that if the parties bargain for a price which

consists of an initial cash price and an amount added on for the right to pay overtime which might otherwise be considered interest, this added amount is not interest but merely a figure used to determine what is the ultimate price contracted for. On the other hand, the court reasons that if the parties in bargaining for the purchase of property adopt the figure that is in fact the sale price but then agree that the seller will permit deferred payments to be made with interest to be paid thereon, this is, in fact, interest, and if it exceeds the allowable rate, it is usurious interest.

The Georgia Supreme Court has defined usury in this way:

Code, § 57–102 provides: 'Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest.' Under § 57–112, any person violating the provisions of § 57–101, by charging more than the maximum rate of interest, forfeits the entire interest. Where land is *sold* at a cash price, but on deferred payments with a greater rate of interest than allowed by law, the contract is usurious. *Irvin v. Mathews*, 75 Ga. 739(2); *Bird v. Benton & Brother*, 127 Ga. 371, 373(4), 56 S.E. 450; *E. Tris Napier Co. v. Trawick*, 164 Ga. 781, 139 S.E. 552.

*Graham v. Lynch*, 206 Ga. 301, 303, 57 S.E.2d 86, 88 (1950) (emphasis added).[4]

While it would seem to require the services of a master of logomachy to apply this principle of law to a given transaction, the

---

4. In *E. Tris Napier Co. v. Trawick*, 164 Ga. 781, 139 S.E. 552 (1927), the court said:

If a vendor and vendee agree upon a cash price of property which is the subject-matter of the sale but the sale itself is not for cash but is distinctly on a credit until a particular time in the future, the transaction will not be rendered usurious because the vendor, in order to make a time price on the property adds to the cash price another sum, and includes the total amount thus arrived at in a promissory note which the purchaser gives securing the same by a mortgage on realty. The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and, though in a given instance this difference may exceed eight per cent., the law as to usury is not applicable. *Rushing v. Worsham*, 102 Ga. 825, 30 S.E. 541. See also, *Graeme v. Adams*, 23 Grat. (Va.) 225 (14 Am.R. 130, 135); *Davidson v. Davis*, 59 Fla. 476, 52 So. 139, 28 L.R.A. (N.S.) 102, 20 Ann.Cas. 1130; 29 Am. & Eng.Enc.Law (2d Ed.), 378; 27 R.C.L. 214, 215. If, however, the property is sold at a cash price, and time is given by the vendor to the purchaser upon a portion of the purchase money, and a greater rate of interest than that allowed by law is charged on such deferred payments, the contract is usurious. *Irvin v. Mathews*, 75 Ga. 739(2); *Ozmore v. Coram*, 133 Ga. 250(3), 65 S.E. 448.

164 Ga. at 782, 139 S.E. at 553.

Then, in *Bird v. Benton*, 127 Ga. 371, 373, 56 S.E. 450, 451 (1906), the court had this to say:

This court has given full recognition to the doctrine that it is lawful and not usurious to charge one price for property sold for cash and a higher price for the same property if sold on credit. It has also steadily maintained the principle that, if the contract is for the sale of property at a cash valuation, and certain payments are to be deferred in consideration that a greater rate of interest than that allowed by law is to be paid by the purchaser, the contract would be usurious. See *Rushing v. Worsham*, 102 Ga. 825, 30 S.E. 541 . . .

Finally, in the case of *Rushing v. Worsham & Co.*, 102 Ga. 825, 30 S.E. 541, 543 (1897), the court said:

In the case of *Irvin v. Matthews*, 75 Ga. 739, supra, it was ruled that "while it is lawful, and not usurious, to charge one price for property sold for cash, and a higher price for the same property if sold on credit, still, if the contract is that the property is to be sold at a cash valuation, and that certain payments are to be deferred, in consideration that a greater rate of interest than that allowed by law is to be paid by the purchaser, then the contract would be usurious."

In transactions of this character, it is the duty of the court to look, not at the form and words, but at the substance of the transaction; and as, on the one hand, it should not pay attention to the words of the transaction, or the manner in which it was negotiated, if the substance of it went to defeat the statute against usury, so, on the other hand, it ought not to rely upon the words or form of the transaction, if in substance such transaction was legal. *Beete v. Bidgood*, 7 Barn. & C. top page 453. If it should appear that the negotiations contemplated a cash price, the payment of which was simply to be deferred in consideration of the computation of interest thereon, then the taking or contracting to take a greater rate of interest than that allowed by the statute would be unlawful. . .

102 Ga. at 828, 30 S.E. at 543.

Georgia courts require that the fact finder make such determination. On this record, however, the issue is foreclosed. Although there is sufficient documentation in the record from which the defendants could argue that these transactions should be classed as *sales* for a cash price for which the loan was extended at a usurious rate for the payment of the balance,[5] it is clear that the defendants waived the right to contest this factual issue in the trial court.[6]

Although the defendants attempted to revive the issue of usury when it came to a computation of the interest, this partial defense is one that could be established only by proving the true nature of the purchase and deferred payment transaction. As to this, it seems clear that the defendants waived the opportunity to present this fact issue to the jury. In response to the court's inquiry after the jury's verdict on the issue of fraud: "Are there any other possible issues besides failure of consideration and accord and satisfaction?" counsel responded: "I believe the others had been abandoned." Further, after the jury's verdicts were all in, but before the jury was discharged, the court stated:

> The Court proposes to enter a judgment which is the face amount of the notes less payments at whatever the in-

[5] The undisputed evidence showed that the Wagnons were interested in purchasing these lots only because they were assured that they would obtain "90 percent financing" for the lots and any resort type buildings which they would build on them. This was discussed as a "package deal"—after completion of the resort homes, the seller would lease the buildings from the Wagnons at a monthly rental which, according to estimates furnished by the company, would approximate the amount necessary for the purchaser to pay his monthly notes, including "interest," which, in turn, could be deducted for tax purposes and thus furnish a "tax shelter" for the purchaser. Moreover, transcripts from the business records of the seller show that each of the transactions was carried on the books of the corporation under a title *"loan number _____."* The same books showed entries indicating the monthly *"interest"* charge and the total *"interest"* paid to date. (emphasis added.) However, no evidence was tendered by either party as to whether, when the Wagnons bought the lots they bought them at the price shown on the document listed in footnote 1, *supra,* as the "cash price" or whether the negotiations were had on the basis of the "deferred price." No price lists were introduced in evidence. Under the Georgia law, these facts would have been determinative.

[6] The evidence of waiver was abundant. After the first issue had been presented to the jury, the trial court asked counsel: "Are there any other possible issues besides failure of consideration and accord and satisfaction?" To this inquiry, counsel for the defendants answered: *"I believe the others had been abandoned,* Your Honor, because we had so many pleadings." (emphasis added.) Counsel for the plaintiffs stood mute.

Subsequently, after all of the verdicts were in, the court said:

> THE COURT: All right. Then the Court proposes to enter a judgment which is the face amount of the notes less payments at whatever the interest rate is. I gather from all three counsel that that is computable, less $250 off the front end. Does anybody have a different idea?
> MR. REID (for the defendants): *We don't,* your Honor.
> THE COURT: You think that is the proper way to enter the judgment?
> MR. REID: *I don't see any other way,* Your Honor.
> THE COURT: All right. Mr. McHaney?
> MR. McHANEY: *I agree,* yes, sir.
> THE COURT: *Nothing further from this jury, then?*
> MR. REID: *Nothing that we can see.* No, sir.
> THE COURT: Mr. McHaney, nothing that you can see?
> MR. McHANEY: No, sir.
> (emphasis added.)

The first mention of usury since the original pleadings was in response to the plaintiffs' post trial motion concerning computation of interest. The defendants claimed that no interest was due because the notes were infected with usury. Without mentioning this defense, the court ordered a new trial on the issue of the notice for attorney's fees, but then, without any reported hearing, prepared its own computations, based on the theory that the full amount of the notes fell due when the first default occurred on May 28, 1974, deducted $50 from the face of each note, credited each note with the amount resulting from an application of "The Rule of 78's." This then gave a total amount which the court felt was due on each note, to which the court added interest at the legal rate of 7 percent from May 28, 1974, until paid.

terest rate is. I gather from all three counsel that is computable, less $250 off the front end. Does anybody have a different idea?

To this, counsel for both parties assented. The court then asked: "Nothing further from this jury then?" and both counsel responded: "No, Sir."

Since the appellants' claim of usury in the appellee's proposed computation of interest is based upon their contention that the original face amount of the notes represented a cash price plus an illegal rate of interest, and since to establish that proposition a jury trial would have been required, it is evident that the usury point was not preserved after the jury was discharged. We therefore conclude that there was no basis on which the entire interest or the added on amount used to compute the deferred payment price, whichever it is called, must be deducted from the face amount of the notes as constituting usurious interest.

## III. APPLICATION OF "THE RULE OF 78's" AND COMPUTATION OF INTEREST.

These two matters are intertwined because the interest allowable on the face amount of these promissory notes depends upon whether the trial court erred in giving effect to the "Rule of 78's" and, if it did not, whether the rule was properly applied.

As noted, the contracts all provided "[u]pon prepayment . . . Buyer is entitled to a rebate of the unearned portion of the FINANCE CHARGE computed in accordance with the 'Rule of 78's.'" In undertaking to compute the amount of the judgment in this case, the district court stated its purpose, quoted above, to give credit on the notes for an amount which it described as "payments of whatever the interest rate is." Then, in its judgment, the court credited each note with a sum which it called "rebate," which, in turn, it described as having been calculated under the "Rule of 78's," "using the formula $R = \frac{FP\ (P+1)}{N\ (N+1)}$, where R = re-

bate, F = finance charge, P = number of installments prepaid, and N = number of total installments."

The purpose of the rebate provision, where applicable, is to make sure that a borrower who has given a series of monthly notes, the amount of which has been computed by taking an initial principal sum, adding interest at a certain percentage for the total period of the series, and then dividing the total amount into the applicable number of months, can pay off the series of notes at any time before the last falls due and obtain a partial proration of the unearned interest. This is based on the theory that without such a provision, the borrower would be paying interest on money for the remaining months during which he did not enjoy the use of the lender's funds.

The appellees here contend that since there is no showing that the face amount of the notes represented anything other than a deferred payment price, and there was thus no unearned interest outstanding on the date of default, the "Rule of 78's" is not applicable. The obvious answer to this, however, is that the contract provided for application of the "Rule of 78's" in the event of a "prepayment." It makes no difference whether inclusion of the prepayment provisions was required by either federal law or by local usury statutes, since the parties themselves saw fit to include it in the contract itself.

It is apparent that the court recognized that, called by whatever name, there was a substantial increment in the amount of each promissory note that represented either interest for the six years and nine months still outstanding on the series of notes or represented the extra charge which the seller fixed for the deferred payments. The court therefore construed the language of the prepayment clause in a manner that equated the default, acceleration, and claim for payment of the face amount of the notes as a "prepayment" referred to in the contract.

 The wording of this provision varies somewhat in the various contracts and

notes. The language on the face of the note is pure gibberish. It says: "If the time of sale of land for which this note is given is prepaid in full by cash before the final installment date, the buyer shall receive a rebate of unearned finance charges computed in accordance with the Rule of 78's." Since both the contracts and the notes were drafted by the seller, we look to the language in the contract which is plain and is more favorable to the purchaser. This makes no reference to payment "in cash." Since the default and automatic acceleration of the remaining 81 monthly payments amounted to a liquidation of the debts,[7] the amount would thus begin bearing interest at the legal rate. We conclude that the trial court could reasonably construe the prepayment provision as requiring the rebate to be allowed as of the time when the claims against the Wagnons became liquidated. However, we disagree with the trial court's apparent determination that the date of the jury verdict was the proper point from which to calculate the rebate. Since each note provided that the entire series would become due upon a single default, the Wagnon's default on May 15, 1974, as to the English Mountain notes and on May 18, 1974, for the Sugar Tree notes "liquidated" the debts. Thus, the court should have rebated the unearned finance charge based on the 81 months remaining on the seven year notes after acceleration rather than the 55 months left after the jury verdict. Further, since the notes were liquidated and thus rebated as of May, 1974, Murdock is entitled under applicable Georgia law to interest at the then lawful rate on the rebated amount of the notes as of those dates.

We, therefore, reverse the trial court's computation of these amounts insofar as it used the date of the jury verdict in the rebate formula.

## IV. ATTORNEY'S FEES.

Under the Georgia law, the provision of a promissory note for the payment of attorney's fees in case of collection by an attorney at law cannot be enforced unless notice is given to the maker of the note of the holder's intent to file suit for the principal and interest and for attorney's fees. The law requires that the notice give an opportunity to the maker to pay off the amount due during a period of 10 days before the expiration of which suit may not be filed. Ga.Code Ann. § 20–506.[8]

We described the rather unusual events concerning the notice of attorney's fees which occurred following the final jury verdict.[9] The trial court disposed of the attorney's fees issue in its final order stating: "The court finds that the plaintiff is not

---

7. Murdock's brief in this court asserts that it "sought interest on the amount of the notes as of the maturity date which was the date that the notes accelerated automatically because of the default by Wagnon, because the notes were liquidated, and therefore susceptible of bearing interest."

Appellee's Brief at 19.

8. "The holder of the note or other evidence of indebtedness, or his attorney at law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. . . . ."

9. See note 3, supra and accompanying text. After all the verdicts were in, the following discussion took place:

THE COURT: All right, now, the Court is tempted to view that that is the end of it, that we draw up the verdict in the amount of— have you checked these yet? (apparently referring to the statutory notice letters regarding attorney's fees)
MR. McHANEY (for plaintiff): For the letters?
THE COURT: Yes.
MR. McHANEY: I found them in the file.
THE COURT: It is not in evidence?
MR. McHANEY: No, Sir.
Then, after the jury was released, the topic of the attorney's fees letters came up again:
THE COURT: Anything further before I recess this case?
MR. McHANEY: Yes, sir. The question of these letters has come up and my recollection is now, the reason they weren't introduced is because you said you would take them and rule on them as a matter of law before they were introduced.
THE COURT: My recollection coincides very much with yours, that I understood that that

entitled to . . . attorney's fees inasmuch as plaintiff has requested amounts in excess of the sums it is entitled to receive."

It is not clear what was meant by the trial court's reason for disallowance of this claim. While a strong argument could be made for the abstract principle that this statute requiring the 10 day notice was intended to require the correct amount of the claim to be stated in the notice in order that the maker would know the correct amount he must pay to avoid the payment of attorney's fees, it is not clear that this is the law of Georgia. However, the notices that have been sent up as part of the record here contained other possible deficiencies. One of these is that when the complaint was filed on the promissory notes, they demanded interest from the date of default until the date of the judgment, whereas the notices made no mention of interest. It may be that the failure of the notice to track the language of the statute by reference to "the principal and interest" when interest is actually claimed in the suit prevents the notice from satisfying the requirements of the statute. However, as we did in the matter of the usury defense, we conclude that the claim for attorney's fees fell by the wayside during the trial of the case. There can be no doubt but that the burden was on the plaintiff to prove that the notice of attorney's fees was sent and that it was in compliance with the statute. As indicated by the colloquy mentioned above, which occurred while the jury was still available, it became apparent to the court and the parties that the notices had

not been introduced in evidence. Thereafter, although the court stated in its subsequent order that it would grant a new trial with respect to this issue, no such trial is reflected in the record. There are two documents purporting to be notices to the Wagnons with respect to the English Mountain and the Sugar Tree lots which respectively bear on their face these notations: "P–1, P–2, C–75–542a (this is the district court clerk's number for this case) admitted." We have searched the record carefully and find no transcript or report of any hearing or any proceeding at which these documents were, or could have been, tendered in evidence. No new trial or hearing of any kind is reported in the records of the district court.

When the trial court inquired after the first jury verdict whether there were any other possible issues besides failure of consideration and accord and satisfaction, counsel for the plaintiffs made no response. The next time the subject matter was raised was after the final jury verdict at which time the court discussed the manner of making up its judgment. At that time, the court, speaking of the notice for attorney's fees asked counsel: "have you checked these yet?" To this counsel responded: "I found them in the file." The court then said: "It is not in evidence?", and counsel replied: "No, Sir." The court then announced the manner in which it would prepare the judgment and asked counsel for any different ideas. To which counsel for the plaintiffs said: "I agree, yes, Sir." After both counsel agreed that

is what was going to happen was that all that was left was a matter of law to be ruled on. I can't say that the discussion ever contemplated the question of whether—and I guess if I think about it, the question of whether there has been got to be evidence to support it. My recollection is that there was nothing said pro or con about the introduction of the letters themselves. I think it was a matter of law myself. But I don't know that I'm in a position now simply to enforce that. I sort of have the feeling that your client who went home thinking that he had lost the case isn't going to feel too badly.
MR. McHANEY: I think it is a matter of law. I think it is simply a statute that you are entitled to that much.

THE COURT: The issue that is raised was a matter of law. There is no question about that, but it would have to be a matter of law based upon evidence, and that is where the hang-up comes.
MR. McHANEY: Well, Mr. Johnson testified to the amount they were asking for.
THE COURT: That doesn't prove—I'll tell you, I think it is close enough that you can get the transcript from our reporter and file a motion for judgment NOV on the attorney's fees, and then I'll consider it in that fashion, but I don't think at the present time and in the state of my memory and so forth that I could do it.

there was "nothing further from this jury," the court released the jury.

At this point, the trial court suggested that the plaintiff's counsel file a motion for j. n. o. v. on the attorney's fee question. This was done, and in response the court entered an order stating: "The court will grant a new trial in this matter as to the question of attorney's fees only, and the evidence therein will be limited to that question." If such a trial was subsequently held, the record does not disclose this fact. As the record stands, therefore, the notices of attorney's fees were never tendered in evidence in open court. We conclude that this failure requires that we affirm the judgment of the trial court denying recovery of the attorney's fees, although on a somewhat different basis.

## V. CONCLUSION.

That part of the court's order of September 22, 1966, dealing with the computation of the rebate due on all five notes is REVERSED, and the case is REMANDED for a redetermination of the rebate in accordance with the standards set forth in part IV above. The judgment is in all other respects AFFIRMED.

AFFIRMED in part; REVERSED and REMANDED in part.