19004. TALLEY *v.* COMMERCIAL CREDIT COMPANY OF GEORGIA.

DECIDED FEBRUARY 20, 1929.

*W. H. Terrell,* for plaintiff in error. *William T. Dean, R. T. Lambert,* contra.

BELL, J. H. W. Talley bought an automobile from Willys-Overland Inc., trading in another car at $400 and paying down in

cash $150. After thus obtaining a credit of $550, he agreed to pay remainder of $1011.50 in 12 monthly installments of $84.30 each, making in all $1561.50 as the gross sum paid and to be paid for the automobile. He executed with the seller a written contract by the terms of which the title was reserved in the seller until the deferred installments were fully paid. The seller, Willys-Overland Inc., transferred this contract to Commercial Credit Company of Georgia, which company, in the course of time, brought in the municipal court of Atlanta an action of trover against Talley for the recovery of the automobile, alleging a balance due of $263.74. The defendant filed a plea in which he alleged that the property was sold to him on the basis of a cash price of $1400, and that after receiving credit of $550 he was due on the principal amount of the purchase-money only $850; and that the seller in taking the contract for a balance of $1011.50 exacted interest to the amount of $161.50, which was in excess of the legal rate in a sum specified. The plea further alleged that the plaintiff had more than paid the full amount of the principal and lawful interest, and prayed to recover the difference. The trial judge found for the plaintiff $159.25, which was $104.49 less than the sum sued for. The plaintiff was dissatisfied, and after unsuccessfully moving for a new trial, appealed to the appellate division. Upon a hearing before that tribunal final judgment was rendered in favor of the plaintiff for $263.74. The defendant carried the case by certiorari to the superior court; and the certiorari having been dismissed, he excepted.

The original contract between Talley, the buyer, and Willys-Overland Inc., the seller, recited an agreement between the parties to sell and to buy at the gross price of $1561.50, with a credit of $550, and a balance due of $1011.50 payable in 12 monthly installments as above stated. The defendant testified as follows:

"The note and contract sued on in this case was signed by me in the office of Mr. White of the Willys-Overland Co., on North Avenue. The first time I came in contact with the Commerical Credit Company was when I got the first notice of the first payment being due. I did not know who had bought the note. Commercial Credit Company rendered me no service on this automobile whatever. They issued a policy which is a joint policy. It was issued through the Home Insurance Company. They instructed

it issued to me and charged the premium to me. On this note there was a balance of $850, and $20 insurance which was transferred to the Commercial Credit Company. They charged me $140 interest on the $850 balance. When I bought the car I paid $150 cash and was allowed $400 on a car I traded in, making the first payment $550, leaving a balance of $850 payable in 12 monthly installments, 30 days apart, $84.30. I have paid to the present notes aggregating $758.70. There was a note of $102.35 paid by Mrs. Lloyd, also insurance in the amount of $141.96, making in all $1002.19 which I have paid to date, which, subtracted from $10.50, leaves $47.89, which is the amount I am due the Commercial Credit Company. They have added $161.50 interest to the original note because there was no carriage, and the $14 was for something else, I don't know what. The $161.50 was made up of $20 insurance, and the balance was interest. They overcharged me in interest $107.50. I don't know anything about carrying charges being added to the note. They never hauled me anywhere."

J. B. White, sworn for the plaintiff, testified as follows: "I was once with the Willys-Overland Company, and witnessed the contract and note involved in this case. Can't say that I wrote up the contract. There are different prices in automobiles when bought for cash and when bought on credit. I can't say how the figures on the back of the contract were arrived at, because it has been a year, and I don't remember. We have total carrying charges, and in this case the amount was $161.50. I don't know what portion of it represents the interest."

In *E. Tris Napier Co.* v. *Trawick*, 164 *Ga.* 781, 782 (139 S. E. 552), the Supreme Court held: "If a vendor and vendee agree upon a cash price of property which is the subject-matter of the sale, but the sale itself is not for cash but is distinctly on a credit until a particular time in the future, the transaction will not be rendered usurious because the vendor in order to make a time price on the property adds to the cash price another sum and includes the total amount thus arrived at in a promissory note which the purchaser gives, securing the same by a mortgage on realty. The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and though in a given instance this difference may exceed eight per cent., the law as to usury is not applicable." It was further said, however, that,

where property is sold at a cash price and time is given by the vendor to the purchaser on a portion of the purchase-money, and a greater rate of interest than that allowed by law is charged on such deferred payments, the contract is usurious. In that case, the facts of which were similar to those of the case now under consideration, it was held that there was an issue of fact as to whether the principal and interest included in the deferred payments represented the agreed price of the property, or whether they included a flat sum as the agreed principal, upon which interest should be charged. According to the recitals of the contract in the present case, the parties agreed upon a time or credit price, and there was no usury charged. The truth of the transaction, however, was open to inquiry, because there is no "contrivance by which usury can be legalized, if it appears that the purpose of the scheme was to exact a larger profit for the use of money" than that allowed by law. *Bank of Lumpkin* v. *Farmers State Bank,* 161 *Ga.* 801 (132 S. E. 221) ; *Flood* v. *Empire Investment Co.,* 35 *Ga. App.* 266 (3) (133 S. E. 60).

In *Rushing* v. *Worsham,* 102 *Ga.* 825, 829 (30 S. E. 541), the Supreme Court said: "In transactions of this character, it is the duty of the court to look, not at the form and words, but at the substance of the transaction; and as on the one hand it should not pay attention to the words of the transaction or the manner in which it was negotiated, if the substance of it went to defeat the statute against usury, so on the other hand it ought not to rely upon the words, or form of the transaction, if in substance such transaction was legal. [Citation.] If it should appear that the negotiations contemplated a cash price, the payment of which was simply to be deferred in consideration of the computation of interest thereon, then the taking or contracting to take a greater rate of interest than that allowed by the statute would be unlawful." While an intent to charge or exact usury will not be presumed, and the burden of proving usury rests upon the party pleading it (*Equitable Mortgage Co.* v. *Watson,* 116 *Ga.* 679 (2), 683, 43 S. E. 49; *Harvard* v. *Davis,* 145 *Ga.* 580 (4), 89 S. E. 740), the defendant's testimony in the present case at least presented an issue of fact as to whether the automobile was sold on the basis of a credit price of $1561.50, with no charge as interest, or at a cash price of $1400, with interest added at an unlawful and exces-

sive rate; and it therefore can not be said as a matter of law that the plaintiff was entitled to recover more than the amount awarded in the judgment of the trial judge. It· follows that the appellate division erred in rendering final judgment in favor of the plaintiff for the larger sum, which approximated the amount sued for. While it would not have been error to grant a new trial upon the discretionary grounds, it was erroneous to render such final judgment in the plaintiff's favor. The superior court erred in not sustaining the certiorari. See in this connection, *Woodbury* v. *Atlanta Dental Supply Co.*, 36 *Ga. App.* 548 (7) (137 S. E. 302).

Judgment reversed. *Jenkins, P. J., and Stephens, J., concur.*