27622. RICHARDSON *et al. v.* C. I. T. CORPORATION.

DECIDED OCTOBER 21, 1939.

*A. W. White*, for plaintiffs in error. *Woodruff & Ward*, contra.

SUTTON, J. ■ The petition set forth a cause of action against the defendants. It alleged, that they were indebted to the plaintiff in a named sum on a contract and note executed on July 7, 1937, to Yarbrough Motor Company and by it sold, transferred, assigned, and set over to the plaintiff on July 12, 1937; that the defendants had defaulted in payment, and that after allowing credit for certain payments before default, and for the net amount received from the sale of a truck (provided for in the contract, a copy of which was attached to the petition as an exhibit), a certain sum with interest remained due and unpaid, for which judgment was prayed. "Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferor. For the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made." Code, § 14-420. As the holder of the note, the plaintiff had the right to bring the present suit thereon. *Williams* v. *Whited*, 41 *Ga. App.* 398 (153 S. E. 205).

The ground of the demurrer that the alleged indebtedness should be reduced by the amount of $608.30, which demurrants denominate "interest" added to the cash price of the truck, and which it is averred is at the rate of 41 per cent. per annum and is usurious, is without merit, for the following reasons: It is shown by the copy of contract attached to the petition, of which the note was a part, that the truck was purchased, not at a cash price, but at a "time price" of $3725.60, for which was executed a note payable in eighteen instalments of $149.25 each, for the unpaid portion. This amount was arrived at by using as a basis the "cash price" of $3117.30, and adding to it a differential of $608.30, according to a certain chart. It is shown that the defendants agreed to the time price thus arrived at by signing the contract and note.

This situation does not present a case of selling an article at a cash price and forbearing immediate collection in consideration of the execution of a note bearing interest from date, but shows a plan of selling an article for an amount termed a "time price" and payable in the future. In these circumstances no question of usury is involved. "If a vendor and vendee agree upon a cash price of property which is the subject-matter of the sale, but the sale itself is not for cash but is distinctly on a credit until a particular time in the future, the transaction will not be rendered usurious because the vendor in order to make a time price on the property adds to the cash price another sum and includes the total amount thus arrived at in a promissory note which the purchaser gives, securing the same by a mortgage on realty. The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and though in a given instance this difference may exceed eight per cent., the law as to usury is not applicable." *E. Tris Napier Co.* v. *Trawick,* 164 *Ga.* 781, 782 (139 S. E. 552). See *Irvin* v. *Mathews,* 75 *Ga.* 739; *Willis* v. *Jefferson,* 75 *Ga.* 743; *Rushing* v. *Worsham,* 102 *Ga.* 825 (30 S. E. 541); *Bird* v. *Benton,* 127 *Ga.* 371, 373 (56 S. E. 450); *Talley* v. *Commercial Credit Co.,* 39 *Ga. App.* 297 (147 S. E. 175).

The ground of the demurrer to the allegations as to the sale of the truck after being repossessed, (a) that it was not alleged how or in what manner the truck was sold, (b) that the allegations do not show that the truck was sold in any legal manner, (c) that the allegations do not show what was the market value of the truck or that it was sold for its market value, (d) that it is not shown what part of the selling expense of $24 was for attorney's fees and what part for advertising, and the allegations do not show any right to charge the defendants for either advertising costs or attorney's fees in the sale of the truck, and (e) that the allegations show no right in the plaintiff to recover attorney's fees, is without merit, for the following reason: Under the contract, on default in the payment of any instalment, the full amount automatically became due and payable forthwith, and the plaintiff had the right, among other things, without any notice or demand, to repossess the truck and sell it at public or private sale, with the right to purchase at such sale; and it was provided that the expense of taking, removing, holding, repairing, and selling, and attorney's

fees, should be deducted from the proceeds of the sale, and that all payments made under the contract should, in case of repossession, be retained as compensation for the use of the property while in purchaser's possession. As the plaintiff had the right to sell either at public or private sale, no allegation was necessary as to the manner in which the truck was sold, and it is not set up in the demurrer that the petition showed any illegal sale. Nor was it necessary to allege that the truck was sold for its market value, such value being material only in the event the plaintiff elected, under the contract, to make no sale but to retain the truck as its own at its market value, which election is shown not to have been made. It was immaterial what part of the $24 expense of selling was for advertising and what part was for attorney's fees, inasmuch as either item of expense was such as might reasonably be incurred in the sale of the truck; and the objection that no right to make such charge is shown is contrary to the plain provisions of the contract.

The ground of demurrer to the allegations as to declaring the full amount due, that it was not shown when the right was exercised or how the defendants were notified, is without merit, for the reason that it is shown by the petition that the default occurred on October 7, 1937, and under the contract the full amount automatically became due and payable forthwith, and a formal declaration or notice to defendants that the entire balance had become due and payable was unnecessary, the allegation of having declared the full amount due being mere surplusage.

The ground of demurrer that it is shown by the allegations of the petition and the exhibit that "interest" was included in the note to maturity, and that defendants are entitled to a pro rata refund because the truck was repossessed before maturity, is without merit, for the reason that the note shows that interest is provided for only after maturity of the instalments, and the amount added to the list or cash price to establish the time price at which the truck was purchased was not interest, but was a differential used in arriving at the time price according to a chart, and to which the purchasers agreed by their act in signing the contract and note. The contract provided that any payments made were to be retained as compensation for the use of the truck while in the possession of the purchaser.

The ground of demurrer that that part of contract, "add, per

chart," $608.30, is indefinite and does not show for what purpose the amount was added, that the chart is not attached to the petition, that it is not shown what items of charge or expense are included in the amount of $608.30, and that no right to recover said amount is shown, is without merit, for the reason that the contract shows that the amount was added to establish a "time price," and was agreed to by the defendants by their act of signing the contract.

To the allegations as to the plaintiff having notified the defendants of its intention to bring suit and judgment be prayed, as shown by copy of notice attached to the petition, for 15 per cent. attorney's fees in addition to the balance due, one ground of demurrer was that no right to recover attorney's fees was shown. This ground is without merit, for the reason that the contract provided for 15 per cent. attorney's fees, or, at the option of the plaintiff, a reasonable sum as attorney's fees if the contract were placed with an attorney for suit.

█ The court passed on the general demurrers of the plaintiff to the pleas and answers of the defendants as amended, before the time the case came on for trial, and sustained the same as to the grounds of the pleas that the defendants were entitled to a credit of $509 as a pro rata part of "interest" included in the selling price, and that the amount of $608.30 was added as a scheme and device to charge 41 per cent. interest, which was usurious, for which reason the said amount should be canceled, and overruled the demurrer as to the grounds of the pleas that the plaintiff, well knowing that the truck was worth the market value of $2500, fraudulently sold it for $1000. It is contended that the court erred in striking portions of the pleas, while at the same time holding other parts of the pleas to be good. While it is the general rule that if any portion of a plea is good a general demurrer thereto should be overruled, still in the present case the action of the court was not harmful to the defendants, inasmuch as the grounds stricken were contentions which could not by proof establish the right of the defendants to a pro rata credit of the so-called "interest" charge of $608.30, or to the total elimination of the amount, on the ground that it was usurious interest. As hereinbefore shown, this amount was not interest, but was a sum which the purchasers agreed should be added to a base price to establish

a "time price," and no interest was provided for except from maturity of the instalments of the time price.

■ After the rulings on the demurrers the case went to trial before the judge and a jury on the petition of the plaintiff and the pleas of the defendant unstricken. The defendants assumed the burden of proving their pleas, and the issues presented were whether or not the plaintiff had acted fraudulently in the sale of the truck, and whether or not Mrs. Richardson signed the contract and note only as surety for her husband, H. H. Richardson, the other defendant. Upon the conclusion of the introduction of evidence in their behalf, as hereinbefore set forth, the court directed a verdict in favor of the plaintiff, upon which error is assigned, and thereafter overruled the defendants' motion for new trial, on which error is also assigned. The grounds of the motion for new trial, besides the general grounds, are that the court erred in directing the verdict for the plaintiff, because the undisputed evidence showed, according to movants, that the market value of the truck at the time of its resale was $2500, and there was no proof that it was sold under the provisions of the contract or for its market value or fair valuation; that the court erred in directing the verdict for the plaintiff against Mrs. Richardson, because, as movants contend, the undisputed evidence showed that she was a married woman, signed the contract and note as surety for her husband, H. H. Richardson, and consequently she was not bound thereby, for certain reasons, which in substance were to the effect that the plaintiff, while holding such title as the seller had, was not a holder in due course, the note itself not having been indorsed although transferred and assigned by the seller, and that the note was taken by the plaintiff subject to any defenses that might be urged against the seller, and she was shown by the evidence to have been only a surety for her husband.

The contention that the sale of the truck was fraudulent is without merit. The contract provided that upon default the seller might repossess the truck and sell the same publicly or privately, with the right to purchase at such sale, the proceeds, less certain expenses, to be credited against the amount unpaid. It did not provide that the "market value" must be obtained at the sale, such value to be taken into account only in the event the seller desired to retain the truck after repossession. In either case the purchaser

agreed to pay the balance remaining, as liquidated damages for the breach of the contract, but any overplus from the sale was to be paid to the purchaser. As the plaintiff, as transferee, elected to sell the truck for the benefit of the purchaser, the only obligation as to the sale was that it be a fair one. The defendants assumed the burden of proof, thus admitting a prima facie case, and wholly failed to show any fraud. While there was testimony from one witness that the market value at the time of the repossession of the truck was $2500, there was no evidence that any one was willing to pay this amount or any more than was realized at the sale. It was not shown that the defendants or anybody were denied the privilege or opportunity of bidding at the sale, and it was admitted that the defendants had knowledge that the truck would be sold on the day when it was sold. In these circumstances the prima facie case in favor of the plaintiff on the question of fraud was not overcome.

The direction of the verdict against H. H. Richardson was in all respects demanded. It follows that as to Mrs. Richardson's plea of a fraudulent sale a verdict in favor of the plaintiff was demanded. On the question of suretyship, however, the evidence in her behalf, together with the fact that the exhibit attached to the pleadings of the plaintiff showed that the note had not been indorsed, was such as to make an issue for the jury's determination; and in this respect the court erred in directing the verdict against her. The negotiation of a note takes effect as of the time when the *indorsement* of the note is actually made (Code, § 14-420), and "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable." (§ 14-508). "No one can be a holder in due course of an instrument payable to a named payee or order, without the indorsement of the payee." *Fourth National Bank* v. *Lattimore,* 168 *Ga.* 547, 550 (148 S. E. 396). "The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is a sufficient indorsement." Code, § 14-402. "To enable the holder of a promissory note payable to the order of a named payee to assert successfully the rights of a bona fide purchaser for value, it must appear that the note was formally indorsed by the payee in writing before its maturity." *Lowry Na-*

tional Bank v. *Maddox,* 4 *Ga. App.* 329, 330 (61 S. E. 296). It not being made to appear that the note sued on had been indorsed, but it being shown that the plaintiff was not a holder in due course, the defendant was let into all of her defenses. *Bank of Commerce* v. *Knowles,* 32 *Ga. App.* 800 (124 S. E. 910); Code, § 14-508. Mrs. Richardson defended under the plea that she signed the note in question as surety, and that under the Code, § 53-503, she was not bound by her act. That section declares: "The wife is a feme sole as to her separate estate, unless controlled by the settlement. Every restriction upon her power in it must be complied with; but while the wife may contract, she may not bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband, and any sale of her separate estate, made to a creditor of her husband in extinguishment of his debts, shall be absolutely void." Although Mrs. Richardson signed the note apparently as principal, it may be shown by parol evidence, as between the original parties, that she signed as surety only, and that the payee of the note, with knowledge of the facts which would constitute her a surety, dealt with her as a surety, the burden being on her to show such fact of suretyship. *Kenimer* v. *Henderson,* 32 *Ga. App.* 202 (122 S. E. 820); *Lovelady* v. *Moss,* 50 *Ga. App.* 652 (179 S. E. 168), and cit. This defense, which she may urge against the original party, may, where the transferee is not in fact a holder in due course, because of the non-indorsement of the note, be also set up against the transferee when suit is brought on the note.

Examining the evidence to which the above principles of law are applicable, the following facts appear: The exhibit attached to the petition shows that the note sued on has never been indorsed; and as the plaintiff is bound by the facts pleaded, it was unnecessary for the defendant to show that the note was not indorsed. It follows that the plaintiff is shown not to be a holder in due course, and that all defenses which might be urged against Yarbrough Motor Company, the seller of the truck, are available against the plaintiff. It was shown by the evidence, that in the sale of the truck the seller dealt exclusively with the husband until the time of the actual signing of the papers, and that Mrs. Richardson, the wife, had opposed, though unknown to the seller, the purchase of the truck; that he was asked if his wife would sign

with him, and at the suggestion of the seller one or more of its agents went with him to his home, where, after some brief conversation, Mrs. Richardson signed; that Coffee, the salesman, told her that he wanted her to sign the papers, but did not tell her why, the only explanation being that it was just a matter of form, and he did not tell her that she would become a joint purchaser. Mrs. Richardson testified that she thought she would have to consent to the purchase of the truck by her husband, and did consent and signed the papers, but did not know that she was obligating herself to pay. Against the testimony of the husband and the wife, the documentary evidence attached to the petition shows on its face that Mr. and Mrs. Richardson entered into a title-retention contract to purchase from Yarbrough Motor Company a certain truck, signing as "purchaser;" that each also signed as "purchaser" a promissory note which is here sued on; that the transfer recites that the Yarbrough Motor Company, for a valuable consideration, the receipt of which was acknowledged, "sells, assigns, transfers, and sets over to C. I. T. Corporation," the plaintiff, the contract signed by the defendants, but the note itself was not indorsed. It is earnestly contended by the defendant in error that Mrs. Richardson can not be heard to say that she signed as surety, and not as a purchaser, because she can not dispute the written evidence which shows a contract for the purchase of a truck. While ordinarily the written contract would be the highest evidence of the capacity in which one signs, her right to plead suretyship enables her to orally deny its pretensions, and in the conflict thus presented the question whether or not her plea has been sustained becomes one for the determination of the jury and not the court. Under the record the jury would be authorized, but not required, to find that Mrs. Richardson signed the note only as surety, and that the seller was acquainted with this fact at the time of signing. As this defense was also available to her as against the transferee of the note, in the absence of indorsement so as to make it a holder in due course, the court erred in directing the verdict against Mrs. Richardson on her plea of suretyship.

■ The court did not err, in respect to H. H. Richardson, in overruling the motion for new trial, but erred in not granting a new trial as to Mrs. Richardson.

*Judgment affirmed in part, and reversed in part. Stephens, P. J., concurs. Felton, J., dissents in part.*

Felton, J. I concur in the judgment, except as to that part which holds that the direction of the verdict against Mrs. Richardson was error. I dissent from that ruling, for the reason that there is not one scintilla of evidence, either positive or circumstantial, which would authorize the inference that Mrs. Richardson signed or agreed to sign in the capacity of surety. Her testimony is all to the effect that in signing she did not intend to be bound at all. Since this is true, the question arises as to whether she is to be bound as a purchaser. I do not think that under the facts such an emergency was shown as will relieve her of her obligation. There is no charge that the opposite party created any emergency or was guilty of any fraud which prevented her from reading the contract. If an emergency of her own making could excuse her, such a one as is contended for in this case will not suffice. If it were permitted, the enforcement of solemn written obligations would become exceedingly difficult.