1. The allegations of the affidavit of illegality were sufficient, as against a motion to strike in the nature of a general demurrer, to sustain the contention that the plaintiff in fi. fa. was not a bona fide purchaser for value.
2. The motion to strike, in the nature of a general demurrer, should have been sustained, because (a) the allegations of fraud were insufficient as a matter of law, in that they were too general; (b) payments made with knowledge of all the facts are voluntary, and can not be recovered; (c) the execution of a note or written contract in renewal of a former contract for purchase-money of articles sold, containing an extension of time, unless fraudulently obtained, precludes the purchaser from the defense of failure of consideration for defects known at the time of the execution of the renewal contract, as the renewal is a novation; (d) a plea of usury, to withstand a general demurrer, must contain specific and definite allegations on which to calculate the usury alleged to have been paid, without aid from extraneous sources.
 DECIDED JULY 1, 1942. *Page 492 
Commerce Finance Company foreclosed a conditional-sale contract against Mrs. Lois Perry. Mrs. Perry filed an affidavit of illegality. Two amendments to the affidavit were offered and allowed. The company moved orally to strike the affidavit and the amendments. The motion was overruled and exceptions pendente lite were filed. The case proceeded to trial and a verdict was returned in favor of Mrs. Perry for $198 principal and $8.38 interest on her claim of recoupment and damages. The plaintiff filed a motion for new trial which was overruled and it excepted. The assignments of error are on the overruling of the oral motion to strike and on the judgment overruling the motion for new trial. As we view the record, the issues involved are to be determined by the pleadings, therefore we will set forth such parts thereof as are essential to an understanding of our view of the case. In doing this it will be necessary to set out somewhat in detail the contract, the illegality, and the oral motion to strike.
The contract specified that the Felton Beauty Supply Company Inc. had delivered, and Mrs. Perry had received, certain merchandise including an Undine machine, a Shelton machine, and a Fischer steamer. The price of the merchandise was stipulated to be $1534.30, $941.39 of which was paid. The balance of $592.91 was payable $35 on December 21, 1938, $23.30 on January 21, 1939, and $23.24 on the 21st of each month thereafter for twenty-three months, as evidenced by a promissory note of even date bearing interest from maturity at the highest legal rate. The contract specified that in the event of default of any payment the entire amount might be declared due, and it obligated Mrs. Perry to keep the property at the Vanity Beauty Shop at Gainesville, Georgia.
The instrument contained the following express warranty: "Said property purchased, as listed herein, is warranted by the vendor to be of good material and durable, and with good care and with proper usage to do as good work as any of a similar style and like amount of use. If said property will not bear the warranty as stated herein, after a trial and use of said property for a period of thirty days from the date hereof, I/we agree to notify the Felton Beauty Supply Company Inc., at 207 Spring Street, N.W.., Atlanta, *Page 493 
Georgia, in writing and by United States registered mail, immediately upon determining the defects thereof, stating in said notice wherein said property failed to satisfy the warranty, and a reasonable time thereafter shall be extended to the vendor to remedy the difficulty in said property; and in the event said difficulty is not remedied, the property herein purchased shall be returned to the Felton Beauty Supply Company Inc., at 207 Spring Street, N.W., Atlanta, Georgia, all charges of shipping said property to be paid by the undersigned, and the vendor hereby reserving the right to replace any defective part or parts, and if after a reasonable time the vendor is unable to remedy the difficulty the vendor agrees to substitute another therefor, that shall fulfill the warranty. I/we further agree that if the vendor shall at my/our request render assistance of any kind or shall remedy any defects before or after the thirty days' trial, such assistance shall in no case be deemed a waiver or excuse for any failure to me/us to fully keep and perform the conditions of this contract. I/we agree that any statements or representations made by any salesman or representative of the vendor shall be of no effect unless incorporated herein. All rights of exemption and homestead laws and all notices of demand, protest, and other notices are hereby waived by the undersigned. A waiver or indulgence by the holder hereof of any default shall not act as a waiver of any subsequent default. It is understood and agreed that all of the rights of the holder hereof are cumulative and not alternative. This contract contains the entire agreement between the parties hereto and any warranty or guaranties not contained or endorsed hereon shall be of no force or effect whatsoever. All other warranties, whether express warranties or implied warranties, being hereby waived. Any provision of this contract prohibited by the law of any State shall as to said State be ineffective to the extent of such prohibition without invalidating any other provision or condition."
The contract was signed on December 12, 1938, by Mrs. Lois Perry, purchaser. On the reverse side of the contract there appeared an assignment, dated December 13, 1938, by the Felton Beauty Supply Company Inc., by W. S. Felton, president, to Commerce Finance Company. The execution, dated November 25, 1939, was levied on the merchandise specified in the contract to satisfy an alleged principal balance due of $472.91. Mrs. Perry *Page 494 
executed a forthcoming bond for the property. To clearly understand the allegations of the affidavit we deem it necessary to set same out here together with the amendments thereto:
"1. Deponent is not indebted to plaintiff in any amount but on the contrary plaintiff is indebted to her in the sum of $135.08, the same being an overpayment as will be hereinafter fully set forth.
"2. Deponent admits she signed the contract which is the basis of this foreclosure proceeding and that plaintiff is the holder of same and would be entitled to recover but for the facts and defenses hereinafter alleged, and defendant claims the right to open and conclude the argument in this case.
"3. Defendant shows that the purported contract foreclosed is utterly void and without consideration because the Undine machine incorporated in said contract was worthless and defendant repeatedly tendered said machine to W. F. Felton, the Sterling Discount Company, and plaintiff, and that each of said parties refused to repair said machine or to accept a return of it." This was amended as follows: "Defendant amends paragraph 3 of said illegality by alleging that plaintiff contends defendant is indebted to it in the sum of $472.91, and defendant alleges that the consideration for the Undine machine is $495, and defendant alleges that the Undine machine was worthless and that the entire consideration for said machine has failed, and that the consideration for the Shelton machine and Steamer has partially failed to the extent of one half the price charged. Defendant further amends paragraph 3 by alleging that she does not know the names of the officers of said corporation or companies and that she frequently and at every opportunity when she was in either of the places of business and when a salesman or collector called at her place of business, she requested of all of them to repair said machine or to take the same off her hands.
"4. Deponent shows that the Commerce Finance Company, plaintiff herein, is not a bona fide purchaser for value before maturity and without notice, and that the purported assignment on the back of said purported contract is dated back and was not signed on the day shown therein if signed at all, and that when said Commerce Finance Company took over said contract the first installment was long past due, and in fact the whole proceeding *Page 495 
was and is a scheme entered into by plaintiff and said W. S. Felton, president of the Felton Beauty Supply Company, to estop defendant from pleading failure of consideration, usury, and the other defenses she has to said contract." This was amended as follows: "Defendant amends paragraph 4 by alleging that the purported date on the back of said contract is December 13, 1938, and deponent shows further that said purported assignment was made on January 12, 1939, and that the first installment due under the terms of said contract was December 20, 1938, and defendant does not have a copy of said contract to attach as an exhibit but that said original and copies are now in the possession, power, custody, and control of plaintiff. Deponent amends paragraph 4 by adding that said first installment on said contract matured December 20, 1938, and that the remainder of said contract was due by installments every thirty days thereafter until paid in full. Defendant amends paragraph 4 by showing that the scheme entered into by plaintiff and the said W. F. Felton was the transfer of said contract after the first installment matured and the dating back of said transfer is and was a scheme and device by which said parties attempted to prevent defendant from pleading her defenses.
"5. Defendant shows that said contract was not turned over to plaintiff before January 12, 1939, if at all, and deponent alleges on information and belief that the same is now the property of Felton Beauty Supply Company and that the alleged plaintiff has entered into a scheme with W. F. Felton, president of said Beauty Supply Company, in an effort to defeat deponent's right to plead her defenses.
"6. Deponent alleges on information and belief that the Commerce Finance Company is owned and controlled by said W. F. Felton, and that Paul Ginsberg, attorney for plaintiff, is also the attorney for W. F. Felton and said Beauty Supply Company, and that said W. F. Felton told deponent on numerous occasions that he handled his own financing and that her contracts would be handled by his company.
"7. Deponent shows that on the 6th day of December, 1937, she signed a contract for $1461.90, paying $800 down payment and leaving a balance of $661.90 due by installments, payable to Felton Beauty Supply Company Inc., being for the property described in plaintiff's foreclosure proceeding. *Page 496 
"8. Deponent shows that on the 13th day of April, 1938, she cancelled said contract by signing another contract due by installments to said Felton Beauty Supply Co. Inc., and in said April 13, 1938, contract, said Felton Beauty Supply Co. included $178.23 as `time and cash price differential,' which is usurious, illegal and void and by reason of said usurious and illegal charge, he forfeited all interest." This was amended as follows: "Deponent amends paragraph 8 of said illegality by showing that on the 13th day of April, 1938, said contract was renewed showing a balance of $661.90, payable by installments.
"9. Deponent shows that said Felton Beauty Supply Co. attempted to transfer said contract of April 13, 1938, to the Sterling Discount Corporation but that the same was not transferred before maturity and the said Sterling Discount Corporation took the same with notice of any defects and defenses had against said contract." This was amended as follows: "Deponent amends paragraph 9 by striking from said paragraph the following words, `that the same was not transferred before maturity and the said Sterling Discount Corporation took the same with notice of any defects and defenses against said contract.'
"10. Deponent shows that in March, 1938, while said original contract was in the hands of Felton Beauty Supply Co. Inc., she took up from the express office in Gainesville, Ga., a C.O.D. package for one Paidar sterilizer and paid $9.50 charges which deponent is entitled to credit on said contract as shown by letter dated April 8, 1938.
"11. On June 12, 1938, deponent paid to Sterling Discount Cor. $8 by check on the Citizens Bank, and on August 15, 1938, she paid said corporation $25.25 by check on the Citizens Bank, and on September 1, 1938, Babb and Nolan paid to said corporation $33.25 for deponent and a like amount on October 1, November 1, and December 1, of 1938, making a total of $134 paid by Babb and Nolan on said contract; and on September 1, 1938, deponent paid to said corporation through W. F. Felton by check on Citizens Bank $25.25, and on September 8, 1938, deponent paid $28.50 to said corporation as shown by `yellow half-sheet,' and on October 5, 1938, deponent paid said corporation $33.25 as shown by `yellow half-sheet,' and on October 15, 1938, deponent paid said corporation $5 by check on Citizens Bank, and on or *Page 497 
about the 14 day of March, 1938, deponent paid to said corporation $160 by check from the First Federal Savings and Loan Asso., that was being held to re-roof deponent's home at 957 Burns Drive, Atlanta, and said sum was received by W. F. Felton and credited on said contract." This was amended as follows: "Defendant amends paragraph 11 of said affidavit by striking from said paragraph the words, `That was being held to re-roof deponent's home at 957 Burns Drive, Atlanta,' and by inserting, `The 14th day of March, 1938,' in the blank lines of said paragraph.
"12. Deponent shows that the credits above alleged amount to $428.75, which was to be credited on the $661.90 contract entered into in April, 1938, which was tainted with usury in the sum of $178.23 and for which deponent is entitled to credit along with the cash payments above alleged thus leaving a balance due on said contract of $54.92.
"13. Deponent shows that on or about the 12th day of December, 1936, W. F. Felton, president of the Felton Beauty Supply Co. Inc. called deponent over long distance phone from Atlanta, Ga., to come to his office, and upon arrival deponent was informed by said Felton that the Sterling Discount Cor. had refused to carry her contract any longer, claiming some payments were behind, and that she must pay off the entire amount or sign a new contract with him.
"14. Deponent shows that she did not have her checks or receipts, and that upon inquiry as to what her balance was on said contract said Felton informed her that he did not know but would figure it up correctly and fill in the blanks after she had signed said contract and a note.
"15. Deponent shows that the said Felton and his employees did not correctly fill in said note and contract, but fraudulently left off the credits she had made on said contract and included carrying charges, or usury, and other excessive and extortionate interest and purported that deponent had purchased $1534.30 worth of merchandise, which is the identical merchandise purchased by her in December, 1937, heretofore set out and caused said paper to show a $941.39 cash payment [purchase], whereas in truth and in fact she did not purchase anything at said time and did not pay anything as a cash payment on said date, and the contract due by installments and the note for $592.91 are utterly void without consideration *Page 498 
and includes a charge of $537.99 usury, because she did not owe at said time anything except the small balance of $54.92 above alleged and therefore such excessive, extortionate, and usurious charges are null and void and said note is unenforceable." This was amended as follows: "Defendant amends paragraph 14 [15] by adding the word `or' between the words `charges' and `usury,' in the fourth line of said paragraph, and striking from said fourth line of said paragraph: `and other excessive and extortionate interest,' and by striking from said paragraph the words `excessive and extortionate' near the bottom of said paragraph.
"16. Deponent shows that at each time said contracts were changed, signed and entered into, the said Felton agreed and renewed his guarantee of said Undine machine, and that she relied upon his statements to make said guarantee good or to repair said machine, and that he failed and refused to do so, but on the contrary claims to have transferred said note to an innocent holder for value, which deponent denies and avers that the plaintiff in this action took said note and contract after maturity and with full notice and subject to all defenses deponent has or could have against said Felton Beauty Supply Co., who obtained said note through its president, W. F. Felton, by the artful means and deceitful practices hereinbefore alleged.
"17. Deponent shows that on the 6th day of January, 1939, she paid to Felton Beauty Supply Co. Inc., $25 by check on Citizens Bank to be credited on said note and contract she was persuaded to sign on December 12, 1938, and which was procured in the manner hereinbefore alleged, and on the 7th day of January, 1939, she paid to said Felton Beauty Supply Co. $25 by check on Citizens Bank that shows to have been credited on this December, 1938, contract; and on the 11th day of April, 1939, deponent paid to plaintiff herein the sum of $15 as shown by letter from Commerce Finance Co. dated 5-3-39, and on the 14th day of April, 1939, deponent paid $15 to plaintiff by check on Citizens Bank on Undine contract as shown by check, and deponent paid to Paul Ginsberg, attorney of record for plaintiff Commerce Finance Co., $25 on said contract as shown by letter copy of which is dated June 23, 1939; and on 6-24-39 deponent paid to said attorney $25 as shown by copy of letter of 6-26-39; and deponent paid the sum of $15 on said debt on the ---- day of Sept., 1939, to said Paul *Page 499 
Ginsberg, attorney, as shown by letter dated 9-21-39; and on the 4th day of Sept., 1939, deponent paid to said attorney by postoffice money order the sum of $15." This was amended as follows: "Defendant amends paragraph 17 by striking the word `Undine' from said paragraph, and adding that on 6-23-39 she paid plaintiff $25 on said debt by check on Citizens Bank of Gainesville, Ga., to Paul Ginsberg, attorney for plaintiff, and on 7-22-39 she paid plaintiff another $25 on said debt by check on Citizens Bank of Gainesville, Ga., to Paul Ginsberg, plaintiff's attorney, and that said credits are not on said notes.
"18. The credits set forth above which were paid on said contract dated Dec. 12, 1938, aggregate $190, and neither of said credits or any portion of the same have been entered on said contract or note, and the said papers as foreclosed and as appear from examination in the hands of plaintiff's attorneys, Paul Ginsberg and T. Glenn Dorough, do not disclose a credit of anything as of this date which is Nov. 30, 1939." This was amended as follows: "Defendant amends paragraph 18 by alleging that the total credits on said contract of 12-13-38 is $240 instead of $190, and that no credits of any kind have been entered on said contract by plaintiff or its attorneys.
"19. Deponent shows that she having paid to plaintiff in this case the sum of $190, and that she only owed the sum of $54.92 when said note and contract were signed in Dec., 1938, and that said plaintiff is not an innocent holder or bona fide purchaser for value without notice and before maturity, that the said plaintiff is indebted to her for said overpayment in the sum of $135.08, and that she is entitled to judgment against the plaintiff for said sum together with interest on the same at the rate of 7 per cent. per annum from the 4th day of Sept., 1938, and by way of cross-action and recoupment prays for a judgment against said Commerce Finance Co. for said sum.
"20. Deponent has tendered, now tenders, and will continue to tender to said plaintiff, the Undine machine which is absolutely worthless and has never been used except by the demonstrator, and deponent was compelled to refund each person's money or give them a new wave on another machine." This was amended as follows: "Deponent amends paragraph 20 by alleging that she has tendered said machine to said W. F. Felton and his attorney, Paul *Page 500 
Ginsberg, and further amends said paragraph by showing that Corine Kearns, Mrs. Henry Martin's niece, Lou Land, et al., who had work done by said demonstrator with said Undine machine, came to deponent and demanded a refund of their money because the work done by said machine was unsatisfactory and worthless, and because of said unsatisfactory work deponent refunded said persons their money on demand.
"21. Deponent alleges on information and belief that the Felton Beauty Supply Co. Inc. and the plaintiff, Commerce Finance Co., are owned, operated and controlled by the same officers, and that any knowledge obtained by the said W. F. Felton, president of Felton Beauty Supply Co., is knowledge of the said Commerce Finance Co., and prays permission of the court to amend this illegality and counter-affidavit by setting forth the officers of each of said parties [companies]."
Paragraph K of the affidavit further alleged: "Deponent further amends said affidavit of illegality by alleging that the consideration of said Undine machine having utterly and totally failed and the purchase-price recited for said machine being $495, the consideration which totally failed, plus the $185.08 which was overpaid on said contract for other merchandise, aggregates $680.08, and deponent should have judgment against said plaintiff for $680.08 and damages and abatement of purchase-price." This paragraph was in turn amended as follows: "Now comes defendant and amends her affidavit or counter-affidavit by striking the sum of $680.08 dollars from paragraph K of amendment of said affidavit, and in lieu thereof prays for a judgment by way of cross-action for $240, the amount paid to said company as holder of said note, instead of $680.08. Affiant shows that the consideration of Shelton machine failed to extent of $180, and the Fischer sterilizer consideration failed to extent of $34.75 or one half the purchase-price of said equipment, and the purchase-price of said articles should be abated to that extent and she has been damaged in said sum by reason of the failure of consideration as to said Undine machine wholly, and Sterilizer and Dryer partially, or 50 per cent."
"M. Affiant shows that said Undine machine was totally worthless and that said machine was valued at $495 in said contract, and that the same was not reasonably suited for the purpose intended and that affiant was deceived and immediately upon learning of *Page 501 
said worthless and faulty machine that affiant tendered the same to W. S. Felton, and has continuously since said time tendered said property to him and the plaintiff in this case, and because of the breach of warranty and total failure of consideration as to said Undine machine she is entitled to damages appropriate thereto as an abatement of the purchase-price.
"N. Affiant shows that said contract of purchase was composed of various items, all priced and itemized separately, and could not be construed as an entire contract, and that the entire purchase-price of said articles failed to the extent of $495 for said Undine machine, and that she offered to restore said machine immediately upon the discovery of its worthlessness.
"O. Affiant pleads the total failure of consideration as to said Undine machine and overpayments on said contract and a breach of warranty, and shows that she is entitled to damages and an abatement in the purchase-price because of such failure of consideration, breach of warranty, overpayments, fraud, usury, and failure to comply with said warranties."
The plaintiff made a motion to strike on the following grounds: "(A) That said affidavit of illegality and the amendments thereto, as amended, did not set forth any facts to show why said execution was proceeding illegally, nor why the amount of same was not due; that same was insufficient in law; that same were pure conclusions of the pleader; that no defensive matter or matters of and for affirmative relief were set forth. (B) Appellant moved to strike all of that portion of the appellee's affidavit of illegality and the amendments thereto, as amended, that relied upon and seeks to set up the plea of usury, either as a defensive matter or for affirmative relief, on the grounds that said portion of said pleadings did not set up any defensive matters or matters of affirmative relief, in that said affidavit as amended clearly and distinctly showed that there was no loan of money, and that the pleadings clearly showed that the controversy involved arose from the sale of merchandise, and said pleadings were insufficient in law. (C) Appellant moved to strike all that portion of the appellee's affidavit of illegality and the amendments thereto as amended that relied upon and sought to set forth failure of consideration of the property sued for, either as a defensive matter or for affirmative relief, on the grounds that said pleadings showed that the contract upon which this suit is *Page 502 
based was a renewal contract, and that said allegations clearly showed that appellee had knowledge of the fact that the consideration of said property had failed prior to the time she executed the contract sued on, and renewed same, and that the pleadings showed that appellee had waived any rights she had to plead failure of consideration. (D) Plaintiff, the appellant herein, moved to strike all that portion of the appellee's affidavit of illegality and the amendments thereto as amended that relied upon and sought to set up the plea of voluntary payments as `over-payment,' either as a defensive matter or as matter for affirmative relief, on the grounds that the pleadings were insufficient in law and there are no allegations to substantiate said matter."
1. The oral motion to strike raised the question as to whether or not the company was a bona fide purchaser for value of the contract declared on. The allegations touching this question, as set out in paragraphs 4, 5, 6, 9, 16, 19, and 21 as amended, were sufficient to withstand a motion to strike in the nature of a demurrer, and the court did not err in overruling the motion as to this contention.
2. We will then proceed to inquire whether or not the allegations of the affidavit were sufficient to set up any defense to the foreclosure proceeding, even though the plaintiff took the paper subject to all defenses which existed between the seller of the merchandise, the Felton Beauty Supply Co. Inc., and the purchaser, Mrs. Perry. These questions, under the pleadings, may be better analyzed by grouping the allegations.
(a) Was fraud sufficiently alleged? Unless fraud other than that alleged to show a fraudulent transfer of the contract was specifically alleged as to the seller against Mrs. Perry, the purchaser, there is no merit in this contention. We have carefully searched the allegations of the affidavit, and outside a bare mention in general terms there is no allegation sufficient on which to base either a defensive matter or an affirmative relief on account of fraud. In Stoddard Manufacturing Co. v.Adams, 122 Ga. 802, 803 (50 S.E. 915), the court said: "General allegations of fraud are never sufficient." *Page 503 
(b) As to the payments which Mrs. Perry alleges she was entitled to recover, from the allegations of the petition all the payments were voluntary and she can not recover them. Code § 20-1007. It was held in McCarty v. Mobley, 14 Ga. App. 225
(3) (80 S.E. 523): "Payments not made under duress, and made with knowledge of all the facts, without fraud or deception on the part of the person to whom payment is made, though in ignorance of the legal rights of the party paying, are voluntary, and can not be recovered." See citations in the McCarty case, supra; also Williams v. Stewart, 115 Ga. 864(2) (42 S.E. 256); Mallory v. Royston Bank, 135 Ga. 702, 706
(70 S.E. 586). There are other authorities to the same effect.
(c) As to a failure of consideration, partial and total, there were no allegations in the affidavit sufficient to sustain this contention. It was not alleged when the defect in the machinery was discovered. It was not alleged that the conditions of the express warranty in the sale contract were complied with, nor are any facts alleged that would relieve Mrs. Perry of the effect of the terms of this express warranty as set out above. The only allegation to this effect was that she offered the machinery to the agents of the seller; that she offered it to Felton, president of the Felton Beauty Supply Co. Inc., and that he promised to remedy the defects. Under the principle announced in Lunsford v. Malsby, 101 Ga. 39 (28 S.E. 496), Mrs. Perry was precluded from suing under the contract: "1. Where to an action upon a promissory note given for the purchase-price of machinery, the defendant filed a plea of failure of consideration, and in support of such plea introduced evidence tending to show that the machinery was not reasonably suited to the purposes for which it was intended, because of certain defects existing therein, and where the evidence further showed that at the time of the execution of the note the defendant had actual knowledge of all of such defects, the law of implied warranty on the part of the seller did not enure to the benefit of the defendant, but on the contrary, he was properly held to have waived the same as to all such defects. 2. Upon the trial of such a case, where the note sued on was absolute and unconditional in its terms, evidence of a parol contract and agreement on the part of the seller of the machinery, made and entered into at the time of the execution of the note, that if the machinery would not do a specified *Page 504 
amount of work within a given time the purchaser would not be bound to pay the note and the signing of the note should be null and void, was inadmissible, as its effect would have been to contradict and vary the terms of the written contract." See alsoAmerican Car Co. v. Atlanta Street Railway Co., 100 Ga. 254
(28 S.E. 40); Tuttle v. Stovall, 134 Ga. 325
(67 S.E. 806, 20 Ann. Cas. 168); Blalock v. Brantley, 17 Ga. App. 579
(87 S.E. 836); Hogan v. Brown, 112 Ga. 662
(37 S.E. 880). Also, fraud may be waived by renewal. McGinnis v.McCormick, 28 Ga. App. 144 (110 S.E. 341): "Where the maker of a promissory note renews it, he can not set up fraud in the procurement of the original note if he knew of the fraud at the time he executed the renewal note. The making of the renewal note under such circumstances is a waiver of the fraud and a recognition of the validity of the original note, and amounts to a ratification thereof. See American Car Co. v. Atlanta StreetRailway Co., 100 Ga. 254 (28 S.E. 40); Montfort v.Americus Guano Co., 108 Ga. 12 (33 S.E. 636); AtlantaBottling Co. v. Hutchinson, 109 Ga. 550 (35 S.E. 124);Hogan v. Brown, 112 Ga. 662 (37 S.E. 880); Cooper v.National Fertilizer Co., 132 Ga. 529 (64 S.E. 650); Tuttle
v. Stovall, 134 Ga. 325 (67 S.E. 806, 20 Ann. Cas. 168); 3 R. C. L. § 321, p. 1106, and notes." The cases cited in the above ruling by Chief Judge Broyles deal with the question of renewal with knowledge of such defects.
(d) The allegations did not sustain a plea of usury. It is true that usury may be pleaded as a defense to a note given for the cash price of merchandise where the interest charged exceeds the legal rate. It is also true that where merchandise is sold on credit the seller may be charged as much therefor as the parties to the sale agree on. In paragraph 8 of the affidavit of illegality it was alleged that in the execution of the contract of April 13, 1938 (when Mrs. Perry cancelled the former contract), there was included $178.23 as "time and cash price differential." Then, again, in paragraph 12 she stated that this $178.23 was included in said contract of April 13, 1938. Again, in paragraph 15 it was alleged that the note declared on was without consideration for the reason that it included a charge of $537.99 usury; that the proper amount was not correctly inserted in the note declared on by the company. We find no other specific mention of usury in the affidavit. *Page 505 
These allegations were too general and vague to sustain a plea of usury. Rushing v. Worsham, 102 Ga. 825 (30 S.E. 541);Richardson v. C. I. T. Cor., 60 Ga. App. 780, 789
(5 S.E.2d, 250); E. Tris Napier Co. v. Trawick, 164 Ga. 781
(139 S.E. 552); Willis v. Jefferson, 75 Ga. 743; Lay v.Seago, 47 Ga. 82; Bank of Lumpkin v. Farmers State Bank,161 Ga. 801 (132 S.E. 221); King v. Moore, 147 Ga. 43
(92 S.E. 757). In Burnett v. Davis, 124 Ga. 541, 543
(52 S.E. 927), the court held: "The requirements of a plea of usury, where the purpose of the plea is either to recover back usury paid or set off the same against the plaintiff's demand, are fixed by statute. Civil Code, § 5090. The purpose of this statute is to require the defense of usury to be so pleaded that the amount that is sought to be recovered or set off may be determined accurately from the allegations in the plea, without aid from extraneous sources. Any defect, therefore, in such a plea which would prevent the determination of the amount would be a defect in substance, and can be taken advantage of by a general demurrer in writing, or an oral motion to strike. When this test is applied to that portion of the plea which is relied upon as a plea of usury, it is at once seen that the plea is defective, if for no other reason, because there were in the plea blanks as to the date and maturity of some of the notes. Without these blanks being filled, of course the amount of usury could not be calculated. As to the effect of blanks in a plea of usury, see the remarks of Mr. Chief Justice Bleckley in Odom v. NewEngland Mortgage Security Co., 91 Ga. 508 (2) (18 S.E. 131). The plea of usury was therefore properly stricken." Regarding the plea in the instant case, there were no specific dates alleged, there was no cash price alleged, no due date given; in fact we find no details from which the allegation of usury might be calculated. There were no specific allegations that would enable one to calculate the amounts of usury claimed. The affidavit as a whole set up no sufficient, definite, legal defenses to the foreclosure, and alleged no specific, definite, legal facts on which an affirmative claim might be based.
The court erred in overruling the motion to strike the affidavit. What transpired thereafter is therefore not before us for consideration.
Judgment reversed. Broyles, C. J., and MacIntyre, J.,concur. *Page 506